## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:                                    *

                                          *          Case No. 22-11208

Diamond Scaffold Services, LLC            *

                                          *

        Debtor.                           *

## JOINT PLAN OF REORGANIZATION OF DIAMOND SCAFFOLD SERVICES, LLC
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Alexandra K. Garrett
 Jason R. Watkins
SILVER VOIT GARRETT & WATKINS
Attorneys at Law, P.C.
4317-A Midmost Drive
Mobile AL 36609-5589
251 343-0800
Email: agarrett@silvervoit.com
        jwatkins@silvervoit.com
LS-8878-15212

*Counsel for Debtor and Debtor-in-Possession*

Edward J. Peterson
JOHNSON POPE BOKOR RUPPEL &
BURNS, LLP
401 E Jackson St., Ste. 3100
Tampa, FL  33602
Telephone: (813) 225-2500
Email: edwardp@jpfirm.com

-and-

Matthew B. Hale (*pro hac vice*)
**STICHTER RIEDEL BLAIN & POSTLER, P.A.**
110 E. Madison Street, Suite 200
Tampa, FL  33602
Telephone: (813) 229-0144
Email: mhale@srbp.com

*Counsel to the Committee of Creditors
Holding Unsecured Claims*

Dated: September 18, 2024

PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE, NOTHING CONTAINED IN THIS PLAN OF REORGANIZATION (THE "**PLAN**") SHOULD BE CONSTRUED AS CONSTITUTING A SOLICITATION OF ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT (AS DEFINED HEREIN) HAS BEEN APPROVED BY AN ORDER OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF ALABAMA, AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN. THE PLAN PROPONENTS RESERVE THE RIGHT TO FILE (I) A MODIFICATION OR SUPPLEMENT TO THIS PLAN OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED PLAN, AND/OR (II) A MODIFICATION OR SUPPLEMENT TO THE DISCLOSURE STATEMENT OR A MODIFIED, AMENDED, OR AMENDED AND RESTATED DISCLOSURE STATEMENT FROM TIME TO TIME. REFERENCE IS MADE TO SUCH DISCLOSURE STATEMENT FOR A DISCUSSION OF THE DEBTOR'S HISTORY, BUSINESS, PROPERTIES, AND OPERATIONS, THE PROJECTIONS FOR THE DEBTOR'S FUTURE OPERATIONS, A SUMMARY OF SIGNIFICANT EVENTS WHICH HAVE OCCURRED TO DATE IN THE REORGANIZATION CASE, A SUMMARY OF THE MEANS OF IMPLEMENTING AND FUNDING THE PLAN, AND THE PROCEDURES FOR VOTING ON THE PLAN. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THE PLAN AND THE DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

# ARTICLE 1
## INTRODUCTION

DIAMOND SCAFFOLD SERVICES, LLC, as Debtor and Debtor-in-Possession in the Bankruptcy Case, and the Committee of Creditors Holding Unsecured Claims (the "**Committee**" and together with the Debtor and Debtor-In-Possession, collectively, the "**Plan Proponents**") hereby propose the following Plan of Reorganization (the "**Plan**") for the resolution of the outstanding Claims against and Equity Interests in the Debtor pursuant to the provisions of Chapter 11 of the Bankruptcy Code, and requests Confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code. The Plan provides for the Debtor's reorganization by proposing a six-year payment plan. Capitalized terms used in the Plan shall have the meanings ascribed to such terms in Article 2.1 of the Plan. Each of the Plan Proponents is a proponent of the Plan within the meaning of Section 1129 of the Bankruptcy Code.

Under Section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from the Holder of a Claim or Equity Interest until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to Holders of Claims and Equity Interests. The Disclosure Statement was approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and has been distributed simultaneously with the Plan to all Holders of Claims and Equity Interests whose votes are being solicited. The Disclosure Statement contains, among other things, (a) a discussion of the Debtor's history, business, assets, and operations, (b) the Projections for the Debtor's future operations, (c) a summary of significant events which have occurred to date in the Reorganization Case, (d) a summary of the means of implementing and funding the Plan, and (e) the procedures for voting on the Plan. Unless otherwise ordered by the Bankruptcy Court, no materials, other than the Plan and the accompanying Disclosure Statement, Disclosure Statement Approval Order, and Ballot, have been approved by the Plan Proponents or the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan. ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR WHOSE INTERESTS ARE IMPAIRED UNDER THE PLAN ARE ENTITLED TO VOTE ON THE PLAN AND ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT, AND ANY EXHIBITS ATTACHED THERETO, IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications to the Plan set forth in Article 14 of the Plan, the Plan Proponents expressly reserve the right to alter, amend, modify, revoke or withdraw the Plan, one or more times, prior to the Plan's substantial consummation.

THE PLAN HAS BEEN APPROVED BY THE PLAN PROPONENTS. IN THE OPINION OF THE PLAN PROPONENTS, THE TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATES A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED UNDER OTHER ALTERNATIVES FOR THE REORGANIZATION OR LIQUIDATION OF THE DEBTOR. ACCORDINGLY, THE PLAN PROPONENTS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST

1

INTERESTS OF CREDITORS AND HOLDERS OF EQUITY INTERESTS, AND THE PLAN PROPONENTS RECOMMEND THAT CREDITORS AND HOLDERS OF EQUITY INTERESTS VOTE TO ACCEPT THE PLAN.

NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, UNLESS OTHERWISE STATED, ALL STATEMENTS IN THE PLAN AND IN THE ACCOMPANYING DISCLOSURE STATEMENT CONCERNING THE HISTORY OF THE DEBTOR'S BUSINESS, THE PAST OR PRESENT FINANCIAL CONDITION OF THE DEBTOR, THE PROJECTIONS FOR THE FUTURE OPERATIONS OF THE DEBTOR, TRANSACTIONS TO WHICH THE DEBTOR WAS OR IS PARTY, OR THE EFFECT OF CONFIRMATION OF THE PLAN ON HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE ATTRIBUTABLE EXCLUSIVELY TO THE PLAN PROPONENTS AND NOT TO ANY OTHER PARTY.

THE PLAN AND THE DISCLOSURE STATEMENT HAVE NOT BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING OR SELLING OR TRANSFERRING SECURITIES OF THE DEBTOR SHOULD EVALUATE THE PLAN AND THE DISCLOSURE STATEMENT IN LIGHT OF THE PURPOSES FOR WHICH THEY WERE PREPARED.

## ARTICLE 2
## DEFINED TERMS; RULES OF CONSTRUCTION

2.1    **Defined Terms**.

2.1.1    As used in the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings set forth below:

"**Administrative Expense**" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case on or before the applicable Administrative Expense Claim Bar Date, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the business of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor-in-Possession in the ordinary course of its business, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Post-petition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) any Super-priority Claim; (c) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (d) any and all other costs or

2

expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 15.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Post-petition tax year or period).

**"Administrative Expense Claim"** means any Claim for the payment of an Administrative Expense.

**"Administrative Expense Claim Bar Date"** means that date which is thirty (30) days after the Effective Date and shall be the deadline for the filing by any Creditor or other party in interest of an application, motion, request or other Bankruptcy Court-approved pleading for allowance of any Administrative Expense Claim.  Any Holder of an Administrative Expense Claim (including a Holder of a Claim for Post-petition federal, state or local taxes) that does not file an application, motion, request or other Bankruptcy Court-approved pleading by the applicable Administrative Expense Claim Bar Date shall be forever barred, estopped and enjoined from ever asserting such Administrative Expense Claim against the Debtor, the Reorganized Debtor, any of its Property, or the Estate, and such Holder shall not be entitled to participate in any Distribution under the Plan on account of any such Administrative Expense Claim.

**"Affiliate"** means, with respect to any Person (other than the Debtor), (a) any other Person which, directly or indirectly, is in control of, is controlled by, or is under common control with such Person, (b) any other Person that, directly or indirectly, owns or controls, whether beneficially, or as trustee, guardian or other fiduciary, twenty-five percent (25%) or more of the equity interests having ordinary voting power in the election of directors of such Person, or (c) any other Person who is a director, officer, joint venturer or partner (i) of such Person, (ii) of any subsidiary of such Person, or (iii) of any Person described in clause (a) above. For the purposes of this definition, control of a Person shall mean the power (direct or indirect) to direct or cause the direction of the management and policies of such Person whether by contract or otherwise.  When used in the Plan as relating to the Debtor, the term "Affiliate" has the meaning ascribed to such term in Section 101(2) of the Bankruptcy Code.

**"Allowed Amount"** means the dollar amount in which a Claim is allowed.

**"Allowed Claim"** means a Claim or that portion of a Claim which is not a Disputed Claim or a Disallowed Claim and (a) as to which a Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, or, by order of the Bankruptcy Court, was not required to be so filed, or (b) as to which no Proof of Claim was filed with the Clerk's Office on or before the Bar Date or the Governmental Unit Bar Date, as applicable, but which has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent, and, in the case of subparagraph (a) and (b) above, as to which either (i) no objection to the allowance of such Claim has been filed within the time allowed for the making of objections as fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court, or (ii) any objection as to the allowance of such Claim has been

3

settled or withdrawn or has been overruled by a Final Order. "Allowed Claim" shall also include a Claim that is allowed by the Bankruptcy Court in a Final Order. "Allowed," when used as an adjective herein (such as Allowed Administrative Expense Claim, Allowed Priority Tax Claim, Allowed Priority Claim, Allowed Secured Claim, and Allowed Unsecured Claim), has a corresponding meaning.

"**Allowed Class ... Claim**" means an Allowed Claim in the particular Class described.

"**Allowed Secured Claim**" means Secured Claim that is an Allowed Claim.

"**Allowed Unsecured Claim**" means an Unsecured Claim that is an Allowed Claim.

"**Assumed Contracts**" means the contracts and executory agreements that the Debtor assumes under Article 7.1 of the Plan.

"**Avoidance Actions**" means any and all actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property, which a trustee, debtor-in-possession or other appropriate party in interest may assert on behalf of the Debtor's Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, regardless of whether or not such action has been commenced prior to the Effective Date.

"**Ballot**" means the Ballot, accompanying the Disclosure Statement and the Plan, on which Holders of Impaired Claims entitled to vote on the Plan may indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions.

"**Bankruptcy Case**" means the case of the Debtor currently pending before the Bankruptcy Court under Chapter 11 of the Bankruptcy Code, which case was commenced by the Debtor on the Petition Date and presently bears Case No.22-11208-JCO-11.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Bankruptcy Counsel**" means Silver Voit & Garrett, Attorneys at Law, P.C., O'Hara Watkins, LLC, and their respective attorneys.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of Alabama, or, as the context requires, any other court of competent jurisdiction exercising jurisdiction over the Bankruptcy Case.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, and the Local Rules, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Bar Date**" means October 24, 2022, the date set by the Bankruptcy Court as the last day for filing a Proof of Claim against the Debtor in the Bankruptcy Case, excluding (a) a Pre-petition Claim of a Governmental Unit, for which a Proof of Claim must be filed with the Bankruptcy Court by the Governmental Unit Bar Date, (b) an Administrative Expense Claim, for which a request for payment of an Administrative Expense must be filed with the Bankruptcy Court by the Administrative Expense Claim Bar Date, (c) a Claim for which a bar date may have been otherwise established by a Final Order of the Bankruptcy Court, for which a Proof of Claim must be filed with the Bankruptcy Court by the date set forth in such Final Order, and (d) a Claim with respect to an executory contract or unexpired lease that is assumed or rejected pursuant to the Plan (as to which the bar date shall be as set forth in Article 7.4 or 7.5, respectively, of the Plan) or a Final Order of the Bankruptcy Court (as to which the bar date shall be as set forth in such Final Order).

"**Business Day**" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday" (as "legal holiday" is defined in Bankruptcy Rule 9006(a)), or (d) a day on which commercial banks in Baldwin County, Alabama are required or authorized to close by law.

"**Cash**" means cash, cash equivalents and other readily marketable direct obligations of the United States, as determined in accordance with generally accepted accounting principles, including bank deposits, certificates of deposit, checks and similar items. When used in the Plan with respect to a Distribution under the Plan, the term "Cash" means lawful currency of the United States, a certified check, a cashier's check, a wire transfer of immediately available funds from any source, or a check from the Reorganized Debtor or the Plan Administrator, as the case may be, drawn on a domestic bank.

"**Causes of Action**" means, subject to any limitations set forth in Article 12 hereof, any and all of the Debtor's or the Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) the Avoidance Actions, and (b) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement or in the Plan. The Causes of Action shall vest in the Post-Confirmation Estate on the Effective Date. When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor pursuant to a Final Order of the Bankruptcy Court.

"**Causes of Action Recoveries**" means the proceeds, benefits and other recoveries of any Causes of Action received by the Plan Administrator.

"**Claim**" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall

include all manner and type of claim, whenever and wherever such claim may arise, including Administrative Expense Claims, and claims based upon or arising under any federal or state securities laws.

"**Class**" means a category of Claims or Equity Interests classified together as described in Article 5 of the Plan.

"**Clerk**" means the Clerk of the Bankruptcy Court.

"**Clerk's Office**" means the Office of the Clerk of the Bankruptcy Court located at John. A. Campbell U.S. Courthouse, 113 St. Joseph St., Mobile, Alabama 36602.

"**Collateral**" means Property in which the Estate has (or had) an interest and that secures (or secured), in whole or part, whether by agreement, statute, or judicial decree, the payment of a Claim.

"**Committee**" means the Committee of Creditors Holding Unsecured Claims appointed by the Bankruptcy Court on July 21, 2022 (Doc. No. 92).

"**Committee Counsel**" means Johnson Pope Bokor Ruppel & Burns, LLP and Stichter Riedel Blain & Postler, P.A., as co-counsel to the Committee.

"**Confirmation**" or "**Confirmation of the Plan**" means the approval of the Plan by the Bankruptcy Court at the Confirmation Hearing.

"**Confirmation Date**" means the date on which the Confirmation Order is entered on the Docket by the Clerk pursuant to Bankruptcy Rule 5003(a).

"**Confirmation Hearing**" means the hearing which will be held before the Bankruptcy Court to consider Confirmation of the Plan and related matters pursuant to Section 1128(a) of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time. The date of the Confirmation Hearing is set forth in the Disclosure Statement Approval Order.

"**Confirmation Order**" means the order of the Bankruptcy Court in the Reorganization Case confirming the Plan pursuant to Section 1129 and other applicable sections of the Bankruptcy Code, as such order may be amended, modified or supplemented.

"**Creditor**" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors with Administrative Expense Claims, Priority Tax Claims, Priority Claims, and Cure Claims.

"**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, due and owing by the Debtor pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non-monetary), arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract (provided such Claim is filed with the Bankruptcy Court by the Cure Claim

6

Submission Deadline).  In no event shall any Claim set out in a Proof of Claim be deemed to be a Cure Claim.

**"Cure Claim Submission Deadline"** means, and shall occur on the same day as, the Voting Deadline.

**"Debt"** has the meaning ascribed to such term in Section 101(12) of the Bankruptcy Code.

**"Debtor"** means Diamond Scaffold Services, LLC.

**"Debtor-in-Possession"** means Diamond Scaffold Services, LLC, as debtor-in-possession in the Bankruptcy Case.

**"Debtor's Projections"** has the meaning ascribed to such term in Article 5.14.3 of the Plan.

**"Determination Date"** means the later of (i) the Effective Date and (ii) the date the order of the Bankruptcy Court allowing a Claim becomes a Final Order (if applicable).

**"Disallowed Claim"** means any Claim which has been disallowed by an order of the Bankruptcy Court, which order has not been stayed pending appeal.

**"Disclosure Statement"** means the  Disclosure Statement Accompanying this Joint Plan of Reorganization of Diamond Scaffold Services, LLC Under Chapter 11 of the Bankruptcy Code, dated as of September 18, 2024, including all Exhibits attached thereto, as submitted and filed by the Debtor pursuant to Section 1125 of the Bankruptcy Code in respect of the Bankruptcy Case and approved by the Bankruptcy Court in the Disclosure Statement Approval Order, and as such Disclosure Statement may be amended, supplemented, modified or amended and restated from time to time.

**"Disclosure Statement Approval Order"** means the Order Approving Disclosure Statement, Fixing Time to File Applications for Administrative Expenses, Setting Hearing on Confirmation of Plan, and Setting Deadlines with Respect to Confirmation Hearing, entered in the Reorganization Case.

**"Disputed Claim"** means any Claim or portion thereof (other than a Disallowed Claim) that is not an Allowed Claim and (a) as to which a Proof of Claim has been filed with the Clerk's Office or is deemed filed under applicable law or order of the Bankruptcy Court, or (b) which has been scheduled in the Schedules, and, in the case of subparagraph (a) and (b) above, as to which an objection has been or may be timely filed or deemed filed under the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court and any such objection has not been (i) withdrawn, (ii) overruled by an order of the Bankruptcy Court, or (iii) sustained by an order of the Bankruptcy Court.  In addition to the foregoing, a Disputed Claim shall mean a Claim that is not an Allowed Claim, whether or not an objection has been or may be timely filed, if (a) the amount of the Claim specified in the Proof of Claim exceeds the amount of

any corresponding Claim scheduled in the Schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Schedules, (c) any corresponding Claim has been scheduled in the Schedules as disputed, contingent or unliquidated, (d) no corresponding Claim has been scheduled in the Schedules, or (e) such Claim is reflected as unliquidated or contingent in the Proof of Claim filed in respect thereof.  To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the amount subject to objection.  "Disputed," when used as an adjective herein (such as Disputed Administrative Expense Claim, Disputed Priority Tax Claim, Disputed Priority Claim, Disputed Secured Claim, and Disputed Unsecured Claim), has a corresponding meaning.

"**Distribution**" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

"**Distribution Date**" means, when used with respect to an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) or an Allowed Priority Claim, the date which is as soon as reasonably practicable (as determined by the Reorganized Debtor) after the Determination Date, but in no event more than thirty (30) days after the Effective Date.  "Distribution Date," when used with respect to Allowed Claims in Classes 1-14, means the date or dates for any Distribution to Holders of Allowed Claims in Classes 1-14, as provided in the Plan, unless such date or dates have been otherwise established by an order of the Bankruptcy Court.

"**Docket**" means the docket or dockets in the Reorganization Case maintained by the Clerk.

"**Effective Date**" means, and shall occur on, the first Business Day on which all of the conditions precedent to the occurrence of the Effective Date contained in Article 11.2 of the Plan have been satisfied or waived by the Plan Proponents.

"**Entity**" has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

"**Equity Interests**" means the membership interests in the Debtor held by Jewell Sumrall, which constitute one hundred percent (100%) of the membership interests in the Debtor.

"**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

"**Estimation Hearing**" means a hearing for the estimation of Claims under Section 502(c) of the Bankruptcy Code.

"**Exculpated Parties**" has the meaning ascribed to such term in Article 12.2 of the Plan.

**"Exhibit"** means an exhibit annexed to the Plan or to the Disclosure Statement, as the context requires.

**"Final Decree"** means the final decree for the Bankruptcy Case entered by the Bankruptcy Court after the Effective Date pursuant to Bankruptcy Rule 3022.

**"Final Decree Date"** means the date on which the Final Decree, obtained after a hearing on notice to the Notice Parties and to such other Persons and Entities as the Bankruptcy Court may direct, is entered on the Docket.

**"Final Order"** means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**"Global Settlement Agreement"** means that certain *Global Settlement and Release Agreement* dated February 5, 2024 by and between the Debtor, the Committee, Sertant, and Mazuma, attached as Exhibit A to the *Amended Joint Motion to Approve Compromise Between the Committee of Creditors Holdings Unsecured Claims, Debtor, Sertant Capital, LLC, SMA II LP I, LLC, First Guaranty Bank, and Mazuma Capital Corp* (Doc. 765).

**"Governmental Unit"** has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**"Governmental Unit Bar Date"** means the date set by Section 502(b)(9) of the Bankruptcy Code as the last day for a Governmental Unit to file a Proof of Claim against the Debtor in the Bankruptcy Case.

**"GUC Cash Flow Payment Milestones"** has the meaning ascribed to such term in Article 12.4.3 of the Plan.

**"GUC Cash Flow Payments"** means the payments to be made by the Reorganized Debtor to the Plan Administrator for the Post-Confirmation Estate under the terms of Section 5.14.2 of the Plan.

**"Holder"** means (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as such is reflected on the Schedules or the books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has assigned or transferred the Claim to a third party and the Debtor or the Reorganized Debtor, as the case may be, have received sufficient written evidence of such assignment or transfer, the assignee or transferee; and (b) as to

9

any Equity Interest, the record owner or holder of such Equity Interest as shown on the register that is maintained by the Debtor or as otherwise determined by order of the Bankruptcy Court.

"**Impaired**" refers to any Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

"**Initial Distribution**" has the meaning ascribed to such term in Article 10.1 of the Plan.

"**Initial Distribution Date**" means the date on which the Initial Distribution is commenced by the Reorganized Debtor.

"**Initial GUC Contribution**" has the meaning ascribed to such term in Article 5.14.5 of the Plan.

"**Initial GUC Distribution**" has the meaning ascribed to such term in Article 5.14.5 of the Plan.

"**Insider**" has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

"**IRS**" means the Internal Revenue Service.

"**Liabilities**" means any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor or any predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any predecessor, successor or assign thereof, any Property of the Debtor, the business or operations of the Debtor, the Bankruptcy Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that, when used in the Plan, the term "Liabilities" shall not include any obligations of the Reorganized Debtor expressly set forth in the Plan.

"**Lien**" means, with respect to any Property, any mortgage, pledge, security interest, lien, right of first refusal, option or other right to acquire, assignment, charge, claim, easement, conditional sale agreement, title retention agreement, defect in title, or other encumbrance or hypothecation or restriction of any nature pertaining to or affecting such Property, whether voluntary or involuntary and whether arising by law, contract or otherwise.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Southern District of Alabama, as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Bankruptcy Case.

"**Manager**" means Jewell Sumrall.

"**Mazuma**" means, collectively, Mazuma Capital Corp. and First Guaranty Bank.

"**Member**" means Jewell Sumrall.

"**New Value Contribution**" means the sum of $250,000.00, which shall be paid over 5 years by Jewell Sumrall pursuant to Article 8.5 of the Plan.

"**New Equity Holder***"* means Jewell Sumrall.

"**Notice Parties**" means (a) the Reorganized Debtor, (b) Bankruptcy Counsel, (c) the U.S. Bankruptcy Administrator, and (d) counsel to the Committee.

"**Party**" means any person or entity, including the Plan Administrator.

"**Person**" means any person, individual, corporation, association, partnership, limited liability company, joint venture, trust, organization, business, government, governmental agency or political subdivision thereof, or any other entity or institution of any type whatsoever, including the Plan Administrator and any "person" as such term is defined in Section 101(41) of the Bankruptcy Code.

"**Petition Date**" means June 21, 2022, the date on which the Debtor commenced the Bankruptcy Case by filing its voluntary petition under Chapter 11 of the Bankruptcy Code.

"**Plan**" means this Joint Plan of Reorganization under Chapter 11 of Title 11, United States Code, dated as of September 18, 2024, and all Exhibits to the Plan, as the same may be amended, supplemented, modified or amended and restated from time to time in accordance with the provisions of the Plan and the Bankruptcy Code.

"**Plan Administrator**" means Mark C. Healy, who will serve as the estate fiduciary of the Post-Confirmation Estate responsible for administering the Post-Confirmation Estate, pursuing the Causes of Action, making Distributions to the Holders of Allowed Class 14 Unsecured Claims, and the additional duties of the Plan Administrator set forth in Article 9 and elsewhere in the Plan.

"**Plan Administrator Account**" means the bank account(s) established by the Plan Administrator on behalf of the Post-Confirmation Estate on or after the Effective Date for the purpose of holding the Plan Administrator Reserve Amount, the Unsecured Creditors' Fund, and any Causes of Action Recoveries.

"**Plan Administrator Reserve Amount**" means the amount of Cash determined by the Plan Administrator to be necessary and appropriate to reserve for anticipated costs of administration of the Post-Confirmation Estate following the Effective Date for a given 120-

day period, including the compensation, fees, and costs of the Plan Administrator and the professionals, consultants, agents and employees retained or to be retained by the Plan Administrator, in each case in connection with liquidating the assets of the Post-Confirmation Estate, and investigating, analyzing and pursuing Causes of Action, and making the Distributions that the Plan Administrator is designated to make under the Plan. The initial Plan Administrator Reserve Amount shall be $50,000.00, subject to adjustment by the Plan Administrator for subsequent periods based on anticipated costs of administration.

**"Plan Documents"** means the proposed form of all documents, if any, necessary to consummate the transactions contemplated under the Plan to occur on or subsequent to the Effective Date.

**"Plan Proponents"** means, collectively, the Debtor, the Debtor-In-Possession and the Committee.

**"Post-Confirmation Estate"** means the Estate on and after the Effective Date, which shall receive and prosecute the Causes of Action, and which shall be separate from the Reorganized Debtor.

**"Post-petition"** means arising or accruing on or after the Petition Date and before the Effective Date.

**"Pre-petition"** means arising or accruing prior to the Petition Date.

**"Priority Claim"** means a Claim that is entitled to a priority in payment pursuant to Sections 507(a)(4), (5) and (7) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Priority Tax Claim"** means a Claim of a Governmental Unit that is entitled to a priority in payment pursuant to Section 507(a)(8) of the Bankruptcy Code and that is not an Administrative Expense Claim, a Secured Claim, a Secured Tax Claim or an Unsecured Claim.

**"Professional"** means any professional employed in the Reorganization Case pursuant to an order of the Bankruptcy Court, pursuant to Section 327 or 1103 of the Bankruptcy Code.

**"*Pro Rata* Share"** means, with respect to any Distribution under the Plan to the Holder of an Allowed Claim in a particular Class or otherwise, a fraction, the numerator of which shall be the amount of such Holder's Allowed Claim and the denominator of which shall be the sum of all Allowed Claims in such Class, all determined as of the applicable Distribution Date.

**"Projections"** means the cash forecast for the Reorganized Debtor for five (5) years, a copy of which is attached to the Disclosure Statement.

**"Proof of Claim"** means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rule 3001, 3002, 3003, or 3004.

**"Property"** means any property or asset of any kind, whether real, personal or mixed, tangible or intangible, whether now existing or hereafter acquired or arising, and wherever located, and any interest of any kind therein.

**"Quarterly Net Cash Flow"** has the meaning ascribed to such term in Article 5.14.3 of the Plan.

**"Rejected Contracts"** has the meaning ascribed to such term in Article 7.1 of the Plan.

**"Reorganization Case"** means the Bankruptcy Case pending before the Bankruptcy Court.

**"Reorganized Debtor"** means the Debtor on and after the Effective Date as reorganized pursuant to the Plan, including any successor thereto by merger, consolidation or otherwise.

**"Schedules"** means, collectively, the bankruptcy schedules filed by the Debtor in the Bankruptcy Case pursuant to Bankruptcy Rule 1007, as any of such schedules has been or may hereafter be amended or supplemented from time to time.

**"Secured Claim"** means any Claim that is—

(a)      secured in whole or in part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law; or

(b)      subject to setoff under Section 553 of the Bankruptcy Code;

but, with respect to both subparagraphs (a) and (b) above, only to the extent of the Estate's interest in the value of the Property securing any such Claim or the amount subject to setoff, as the case may be.  Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in the Property securing such Claim or the amount subject to setoff is less than the amount of the Allowed Claim, the resulting deficiency constitutes an Unsecured Claim.

**"Secured Tax Claim"** means a Secured Claim of a Governmental Unit for Pre-petition taxes.

**"Security"** has the meaning ascribed to such term in Section 101(49) of the Bankruptcy Code.

**"Sertant"** means SMA II LP I, LLC and Sertant Capital LLC collectively.

13

"**Sertant MLA**" means that certain Master Lease Agreement No. SC 002118 and Master Lease Schedule A thereto (as subsequently amended) by and between Sertant and the Debtor.

"**Sertant MLA Documents**" means the Sertant MLA together with any and all documents executed by the Debtor and Sertant evidencing and relating to the Sertant MLA.

"**Sertant GUC Escrow Payment**" means the $100,000.00 payment to be made by Sertant for the benefit of Class 14 General Unsecured Creditors from the funds it is holding in escrow pursuant to the Global Settlement Agreement.

"**Superpriority Claim**" means any Claim created by a Final Order of the Bankruptcy Court providing for a priority senior to that provided in Section 507(a)(1) of the Bankruptcy Code, including any such Claims granted under Section 364(c)(1) of the Bankruptcy Code.

"**Taxing Authorities**" has the meaning ascribed to such term in Article 10.11.1 of the Plan.

"**Truist Bank**" means Truist Bank, a North Carolina banking corporation.

"**Unimpaired**" refers to a Claim that is not Impaired.

"**United States**" means the United States of America.

"**U.S. Bankruptcy Administrator**" means the Office of the United States Bankruptcy Administrator for the Southern District of Alabama.

"**Unsecured Claim**" means any Claim not otherwise classified in the Plan, including (a) any Claim arising from the rejection of an executory contract or unexpired lease under Section 365 of the Bankruptcy Code, (b) except as otherwise provided in the Plan, any portion of a Claim to the extent the value of the Creditor's interest in the Estate's interest in the Collateral securing such Claim is less than the amount of the Allowed Claim, or to the extent that the amount of the Claim subject to setoff is less than the amount of the Allowed Claim, as determined pursuant to Section 506(a) of the Bankruptcy Code, (c) any Claim arising from the provision of goods or services to the Debtor prior to the Petition Date, and (d) any Claim designated as an Unsecured Claim elsewhere in the Plan.

"**Unsecured Creditor**" means any Creditor holding an Unsecured Claim.

"**Unsecured Creditors' Fund**" means the fund maintained and accounted for by the Plan Administrator for the Post-Confirmation Estate comprised of (a) GUC Cash Flow Payments received by the Post-Confirmation Estate; (b) Causes of Action Recoveries; and (c) any other Cash received by the Post-Confirmation Estate for the benefit of the Unsecured Creditors.

"**Unsecured Creditors' Fund Initial Payments**" has the meaning ascribed to such term in Article 5.14.5 of the Plan.

"**Voting Deadline**" means the last day to file, with the Bankruptcy Court, a Ballot accepting or rejecting the Plan as fixed by the Disclosure Statement Approval Order.

"**Voting Instructions**" means the instructions for voting on the Plan contained in the section of the Disclosure Statement entitled "Voting Instructions" and in the Ballot.

2.1.2   Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed to that term in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be (with the Bankruptcy Code or the Bankruptcy Rules, as the case may be, controlling in the case of a conflict or ambiguity).

2.2   **Rules of Construction.**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as it may have been or may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an Entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Article 2.2.

## ARTICLE 3
## TREATMENT OF UNCLASSIFIED CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims have not been classified in the Plan.  The treatment accorded to Administrative Expense Claims is set forth below in this Article 3.

3.1   **Administrative Expense Claims.**

3.1.1    Except as otherwise provided in Articles 3.1.2 and 3.1.3 below, each Holder of an Allowed Administrative Expense Claim (including Allowed Administrative Expense Claims of Professionals) shall be paid (a) no later than thirty (30) days after the Effective Date, an amount, in Cash, by the Reorganized Debtor equal to the Allowed Amount of its Administrative Expense Claim, in accordance with Section 1129(a)(9)(A) of the Bankruptcy Code, or as to an Administrative Expense Claim of a Professional, no later than (30) days after the date on which such Administrative Expense Claim is approved by the Bankruptcy Court, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Reorganized Debtor, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.

3.1.2.    All unpaid fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911-1930, for any calendar quarter ending prior to the Effective Date shall be paid to the Clerk by the Reorganized Debtor by no later than thirty (30) days following the Effective Date.  Following the Effective Date, any Chapter 11 Quarterly Fees required to be paid pursuant to 28 U.S.C. §1930(a)(6), with respect to the Bankruptcy Case shall be paid to the Clerk by the Reorganized Debtor, until the earlier of (i) the closing of the Bankruptcy Case by the issuance of a Final Decree by the Bankruptcy Court, or (ii) the entry of an order by the Bankruptcy Court dismissing the Bankruptcy Case or converting the Bankruptcy Case to another chapter under the Bankruptcy Code. Any such payment to the Clerk shall be in the appropriate sum required pursuant to 28 U.S.C. §1930(a)(6) based upon the applicable disbursements for the relevant period and shall be made within the time period set forth in 28 U.S.C. §1930(a)(6).

3.1.3    All Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid by the Reorganized Debtor (a) in the ordinary course of business in accordance with contract terms, or (b) under such other terms as may be agreed upon by both the Holder of such Allowed Administrative Expense Claim and the Reorganized Debtor, as the case may be, or (c) as otherwise ordered by a Final Order of the Bankruptcy Court.


### ARTICLE 4
### CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Equity Interests.  A Claim or Equity Interest (a) is classified in a particular Class only to the extent the Claim or Equity Interest qualifies within the description of that Class and (b) is classified in a different Class to the extent the Claim or Equity Interest qualifies within the description of that different Class.  For purposes of the Plan, the Claims and Equity Interests are classified as follows:

4.1    **Class 1: Priority Claims.**

Class 1 consists of all Allowed Priority Claims.

4.2     **Class 2:  Mazuma.**

Class 1 consists of the Allowed Secured Claim of Mazuma.

4.3     **Class 3: Internal Revenue Service.**

Class 3 consists of the Allowed Secured Claim of Internal Revenue Service.

4.4     **Class 4: Cajuns, LLC.**

Class 4 consists of the Allowed Secured Claim of 3 Cajuns, LLC, which, for purposes of this Plan includes any claims held by its members who are Byrd Capital, LLC, Granite State Services, LLC, and Strategic Investments, LLC.

4.5     **Class 5: Alabama Department of Revenue.**

Class 5 consists of the Allowed Secured Claim the Alabama Department of Revenue.

4.6     **Class 6:  Baldwin County Revenue Commission.**

Class 6 consists of the Allowed Secured Claim of Baldwin County Revenue Commission.

4.7     **Class 7:  Mississippi Department of Revenue.**

Class 7 consists of the Allowed Secured Claim of Mississippi Department of Revenue.

4.8     **Class 8:  Tennessee Department of Revenue.**

Class 8 consists of the Allowed Secured Claim of Tennessee Department of Revenue.

4.9     **Class 9:  Texas Comptroller of Public Accounts.**

Class 9 consists of the Allowed Secured Claim of the Texas Comptroller of Public Accounts.

4.10     **Class 10:  Texas Workforce Commission.**

Class 10 consists of the Allowed Secured Claim of Texas Workforce Commission.

4.11     **Class 11:  BMO Harris Bank N.A.**

Class 11 consists of the Allowed Secured Claim of BMO Harris Bank N.A.

4.12     **Class 12:  Ford Motor Credit Company, LLC**.

Class 12 consists of the Allowed Secured Claims of Ford Motor Credit Company, LLC.

17

4.13    **Class 13:  Truist Bank.**

Class 13 consists of the Allowed Secured Claims of Truist Bank.

4.14    **Class 14: Unsecured Non-Priority Creditors.**

Class 14 consists of the Allowed Unsecured Claims of Creditors who are not otherwise classified.

4.15    **Class 15: Equity Interests**

Class 15 consists of all Equity Interests in the Debtor.

## ARTICLE 5
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

All other Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article 5.  Except as otherwise specifically provided in the Plan, the treatment of, and the consideration to be received by, Holders of Allowed Claims and Holders of Allowed Equity Interests pursuant to the Plan shall be in full and final satisfaction, settlement, release, extinguishment and discharge of their respective Allowed Claims (of any nature whatsoever) and Allowed Equity Interests. Creditors whose debts were marked as contingent, unliquidated, or disputed in Debtor's Schedules and who did not file a proof of claim are disallowed and will not be paid under the Plan.

5.1    **Class 1: Priority Claims.**

5.1.1 Class 1 consists of the Allowed Priority Claims.

5.1.2 Each Holder of an Allowed Priority Claim shall receive from the Reorganized Debtor on account of such Allowed Priority Claim, payment in full in equal installment payments in Cash over a term of 60 months from the Petition Date, beginning on the Effective Date, with interest at the applicable statutory rate, or if there is none at 8.25% per annum, in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code.  Notwithstanding the above, each Holder of an Allowed Priority Claim may be paid under such other terms as may be agreed upon by both the Holder of such Allowed Priority Claim and the Plan Administrator.

5.1.3    The automatic stay shall be lifted solely to the extent necessary to provide the IRS the discretion to exercise its offset rights to apply any funds generated by Debtor's application for the Employee Retention Credit against the IRS's Class 1 Allowed Priority Claim.

5.1.4    Class 1 is Impaired by the Plan. Allowed Priority Claimants are entitled to vote to accept or reject the Plan.

18

5.2    **Class 2:  Mazuma.**

5.2.1   Class 2 consists of the Allowed Secured Claim of Mazuma in the amount of $2,000,000.00, consistent with the treatment provided in the Global Settlement Agreement and reduced by payments made during the Bankruptcy Case.

5.2.2   Mazuma shall retain its lien on the Debtor's personal property, including its liens on the Scaffolding Equipment (as defined in the Global Settlement Agreement) and the Receivables (as defined in the Global Settlement Agreement) to the extent of the replacement liens established by the Bankruptcy Court's orders granting the Debtor's initial cash collateral motion (Doc. 9) and the Debtor's amended cash collateral motion (Doc. 368).

5.2.4   Upon the Effective Date, Mazuma shall immediately apply the MCC Deposit (as defined in the Global Settlement Agreement) to its Allowed Secured Claim, therefore reducing the amount of its Allowed Secured Claim to $1,892,025.00, reduced by payments made during the Bankruptcy Case.

5.2.5   Mazuma's Allowed Secured Claim shall be paid in full pursuant to the terms set forth in this subsection. The Reorganized Debtor shall pay Mazuma's Allowed Secured Claim with interest at 9.25% per annum in equal monthly payments of $39,505.29 over sixty (60) months, beginning on the date that is the first day of the month following the expiration of thirty (30) days after the Effective Date with a 30-day grace period and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.2.6   Upon payment in full pursuant to the terms of the Plan, Mazuma shall release its liens against the Scaffolding Equipment (as defined in the Global Settlement Agreement) and the Receivables (as defined in the Global Settlement Agreement).

5.2.7   The treatment set forth in this Article 5.2 is supplemented and qualified in all respects by the Global Settlement Agreement. To the extent of any inconsistency between the Global Settlement Agreement and this Plan, the Global Settlement Agreement shall expressly control.

5.2.8   Class 2 is Impaired by the Plan. Mazuma, as the Holder of the Class 2 Claim, is entitled to vote to accept or reject the Plan.

5.3    **Class 3:  Internal Revenue Service.**

5.3.1   Class 3 consists of the Allowed Secured Claim of the Internal Revenue Service (sometimes hereinafter the "**IRS**") in the amount of $232,869.72.

5.3.2   The IRS shall retain its tax lien(s) on the Debtor's personal property.

5.3.3   The IRS's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the IRS's Allowed Secured Claim with interest at

19

the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

      5.3.4   Upon payment in full pursuant to the terms of the Plan, the IRS shall release its liens against the Debtor's personal property.

      5.3.5   Class 3 is Impaired by the Plan. The IRS, as holder of the Class 3 Claim, is entitled to vote to accept or reject the Plan.

    5.4   **Class 4:  3 Cajuns, LLC.**

      5.4.1   Class 4 consists of the Allowed Secured Claim of 3 Cajuns, LLC in the amount of $80,000.00, less any adequate protection payments made by the Debtor under cash collateral orders.

      5.4.2   3 Cajuns, LLC shall retain its lien on the Debtor's personal property and accounts receivable.

      5.4.3   The 3 Cajuns, LLC's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay 3 Cajuns, LLC's Allowed Secured Claim with interest at 8.25% per annum in equal monthly payments of $1,631.70 over sixty (60) months, beginning on the date that is the first day of the month following the expiration of thirty (30) days after the Effective Date with a thirty (30) day grace period and continuing on the first day of every succeeding month for fifty-nine (59) months.

      5.4.4   Upon payment in full pursuant to the terms of the Plan, 3 Cajuns, LLC shall release its liens against the Debtor's personal property and accounts receivable.

      5.4.5   Class 4 is Impaired by the Plan. 3 Cajuns, LLC, as holder of the Class 4 Claim, is entitled to vote to accept or reject the Plan.

    5.5   **Class 5:  Alabama Department of Revenue.**

      5.5.1   Class 5 consists of the Allowed Secured Claim of the Alabama Department of Revenue in the amount of $28,181.83, less any adequate protection payments made by the Debtor under cash collateral orders.

      5.5.2   The Alabama Department of Revenue shall retain its lien on the Debtor's personal property.

      5.5.3   The Alabama Department of Revenue's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the Alabama Department of Revenue's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first

payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.5.4   Upon payment in full pursuant to the terms of the Plan, the Alabama Department of Revenue shall release its liens against the Debtor's personal property.

5.5.5   Class 5 is Impaired by the Plan.  The Alabama Department of Revenue, as holder of the Class 5 Claim, is entitled to vote to accept or reject the Plan.

5.6     **Class 6:  Baldwin County Revenue Commission.**

5.6.1   Class 6 consists of the Allowed Secured Claim of the Baldwin County Revenue Commission in the amount of $627.36, less any adequate protection payments made by the Debtor under cash collateral orders.

5.6.2   The Baldwin County Revenue Commission shall retain its tax lien(s) on the Debtor's personal property.

5.6.3   The Baldwin County Revenue Commission's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the Baldwin County Revenue Commission's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.6.4   Upon payment in full pursuant to the terms of the Plan, the Baldwin County Revenue Commission shall release its liens against the Debtor's personal property.

5.6.5   Class 6 is Impaired.  The Baldwin County Revenue Commission, as holder of the Class 6 Claim, is entitled to vote to accept or reject the Plan.

5.7     **Class 7:  Mississippi Department of Revenue.**

5.7.1   Class 7 consists of the Allowed Secured Claim of the Mississippi Department of Revenue in the amount of $672.57, less any adequate protection payments made by the Debtor under cash collateral orders.

5.7.2   The Mississippi Department of Revenue shall retain its tax lien(s) on the Debtor's personal property.

5.7.3   The Mississippi Department of Revenue's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the Mississippi Department of Revenue's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first

payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.7.4  Upon payment in full pursuant to the terms of the Plan, the Mississippi Department of Revenue shall release its liens against the Debtor's personal property.

5.7.5  Class 7 is Impaired.  Mississippi Department of Revenue, as holder of the Class 7 Claim, is entitled to vote to accept or reject the Plan.

5.8  **Class 8:  Tennessee Department of Revenue.**

5.8.1  Class 8 consists of the Allowed Secured Claim of the Tennessee Department of Revenue in the amount of $3,649.73, less any adequate protection payments made by the Debtor under cash collateral orders.

5.8.2  The Tennessee Department of Revenue shall retain its tax lien(s) on the Debtor's personal property.

5.8.3  The Tennessee Department of Revenue's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay Tennessee Department of Revenue's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.8.4  Upon payment in full pursuant to the terms of the Plan, the Tennessee Department of Revenue shall release its liens against the Debtor's personal property.

5.8.5  Class 8 is Impaired.  The Tennessee Department of Revenue, as holder of the Class 8 Claim, is entitled to vote to accept or reject the Plan.

5.9  **Class 9:  Texas Comptroller of Public Accounts.**

5.9.1  Class 9 consists of the Allowed Secured Claim of the Texas Comptroller of Public Accounts (sometimes hereinafter the "**Texas Comptroller**") in the amount of $17,427.87, less any adequate protection payments made by the Debtor under cash collateral orders.

5.9.2  The Texas Comptroller shall retain its tax lien(s) on the Debtor's personal property.

5.9.3  The Texas Comptroller's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay Texas Comptroller's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

22

5.9.4 Upon payment in full pursuant to the terms of the Plan, the Texas Comptroller shall release its liens against the Debtor's personal property.

5.9.5 Class 9 is Impaired. The Texas Comptroller, as holder of the Class 9 Claim, is entitled to vote to accept or reject the Plan.

5.10 **Class 10: Texas Workforce Commission.**

5.10.1 Class 10 consists of the Allowed Secured Claim of the Texas Workforce Commission, in the amount of $4,886.09, less any adequate protection payments made by the Debtor under cash collateral orders.

5.10.2 The Texas Workforce Commission shall retain its tax lien(s) on the Debtor's personal property.

5.10.3 The Texas Workforce Commission's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the Texas Workforce Commission's Allowed Secured Claim with interest at the applicable statutory rate in equal monthly payments amortized over sixty (60) months from the Petition Date, with the first payment being due on the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

5.10.4 Upon payment in full pursuant to the terms of the Plan, the Texas Workforce Commission shall release its liens against the Debtor's personal property.

5.10.5 Class 10 is Impaired. The Texas Workforce Commission, as holder of the Class 10 Claim, is entitled to vote to accept or reject the Plan.

5.11 **Class 11: Secured Claim of BMO Harris Bank N.A.**

5.11.1 Class 11 consists of the Allowed Secured Claim of BMO Harris Bank N.A. in the amount of $48,265.54, less any adequate protection payments made by the Debtor under cash collateral orders.

5.11.2 BMO Harris Bank N.A. shall retain its respective lien on the Debtor's three (3) 2020 Wade 48' X 102" Flatbed trailers.

5.11.3 The Reorganized Debtor shall continue to make monthly payments to BMO Harris Bank N.A. pursuant to the terms of its respective contract(s). All existing loan documents made by and between the Debtor and BMO Harris Bank N.A. shall continue to be valid and enforceable except to the extent modified by the Plan.

23

5.11.4   Upon payment in full of its Allowed Secured Claim pursuant to the terms of the Plan, BMO Harris Bank N.A. shall release the lien or liens securing such Allowed Secured Claim.

5.11.5   BMO Harris Bank N.A. is not Impaired and is not entitled to vote to reject or accept the Plan.

5.12   **Class 12:  Ford Motor Credit Company, LLC.**

5.12.1   Class 12 consists of the Allowed Secured Claims of Ford Motor Credit Company, LLC ("**Ford**"), which include the following:

- 2020 Ford F150 (4922): Allowed Secured Claim amount of $33,503.32
- 2019 Ford F150 (2418):  Allowed Secured Claim amount of $31,307.19
- 2020 Ford F150 (0318): Allowed Secured Claim amount of $51,412.32
- 2020 Ford F150 (2888): Allowed Secured Claim amount of $38,616.26
- 2016 Ford F150 (4905): Allowed Secured Claim amount of $7,202.78

5.12.2   Ford shall retain its respective liens on applicable vehicles.

5.12.3   The Reorganized Debtor shall pay each of Ford's Allowed Secured Claims with interest at 8.25% per annum in equal monthly payments as reflected below over sixty (60) months, beginning on the date that is the first day of the month following the expiration of thirty (30) days after the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months.

| Vehicle and Loan No. | Monthly Payment |
| --- | --- |
| 2020 Ford F150 (4922) | $683.34 |
| 2019 Ford F150 (2418) | $638.55 |
| 2020 Ford F150 (0318) | $1,048.62 |
| 2020 Ford F150 (2888) | $787.63 |
| 2016 Ford F150 (4905) | $146.91 |

5.12.4   Upon payment in full of each of its Allowed Secured Claims pursuant to the terms of the Plan, Ford shall release the lien or liens securing such Allowed Secured Claim.

5.12.5   Class 12 is Impaired.  Ford, as holder of Class 12 Claims, is entitled to vote to accept or reject the Plan.

Ford previously obtained relief from stay and repossessed two (2) vehicles in the possession of the Debtor.  The vehicles and associated claim amounts are as follows:

- 2020 Ford F-150 (5410): Allowed Secured Claim amount of $42,196.81
- 2019 Ford F-150 (2231): Allowed Secured Claim amount of $27,147.88

24

Ford shall have an Allowed Unsecured Claim includable in Class 14 equal to any deficiency amount(s) associated with the repossession and sale of these two (2) vehicles.

5.13    **Class 13:  Truist Bank.**

5.13.1    Class 13 consists of the Allowed Secured Claims of Truist Bank, which include the following:

- 2018 Ford F-150 (1646):  Allowed Secured Claim amount of $33,024.97.
- 2019 Ford F-150 (0025): Allowed Secured Claim amount of $26,504.72.

5.13.2  Truist Bank shall retain its respective liens on applicable vehicles.

5.13.3  The Reorganized Debtor shall pay each of Truist Bank's Allowed Secured Claims with interest at 8.25% per annum in equal monthly payments as reflected below over sixty (60) months, beginning on the date that is the first day of the month following the expiration of thirty (30) days after the Effective Date and continuing on the first day of every succeeding month for fifty-nine (59) months with a thirty (30) day grace period.

| Vehicle and Loan No. | Monthly Payment |
| --- | --- |
| • 2018 Ford F-150 (1646) | $673.59 |
| • 2019 Ford F-150 (0025) | $540.60 |

5.13.4    Upon payment in full of each of its Allowed Secured Claims pursuant to the terms of the Plan, Truist Bank shall release the lien or liens securing such Allowed Secured Claim.

5.13.5  Class 13 is Impaired.  Truist Bank, as holder of Class 13 Claims, is entitled to vote to accept or reject the Plan.

5.14    **Class 14:  Unsecured Claims (Unsecured Claims Not Otherwise Classified).**

5.14.1  Class 14 consists of all Unsecured Claims not otherwise classified in the Plan.

5.14.2  Each Holder of an Allowed Class 14 Claim shall receive, in full satisfaction of such Creditor's Allowed Unsecured Claim, such creditor's *pro rata* share of the Unsecured Creditors' Fund.  The Reorganized Debtor shall pay an amount equal to 85% of its Quarterly Net Cash Flow, but in no instance less than $197,400.00 or more than $393,750.00 per quarter, attributable to the immediately preceding calendar quarter into the Unsecured Creditors' Fund (the "**GUC Cash Flow Payments**"), which shall be deposited into the Plan Administrator Account and maintained by the Plan Administrator, for six (6) years as follows: (a) the Debtor shall make the first GUC Cash Flow Payment into the Unsecured Creditors' Fund, which shall be based on the

Debtor's Quarterly Net Cash Flow for the first quarter of 2025, no later than April 30, 2025; and (b) the Reorganized Debtor shall make all subsequent GUC Cash Flow Payments into the Unsecured Creditors' Fund each quarter on the last day of the month following the close of the applicable quarter and shall have a thirty (30) day grace period for each payment.

  5.14.3  For purposes of calculating the GUC Cash Flow Payments, "**Quarterly Net Cash Flow**" shall be total cash receipts from the business operations of the Reorganized Debtor for the applicable period less (i) costs of sales, operating, general, and administrative expenses, (ii) cash necessary for debt service and payments required under the Plan to Creditors other than the Class 14 Claims, (iii) payment of or reserved payment for applicable income taxes, and (iv) reasonable capital reserves. All preceding categorizations shall be interpreted consistent with the categorizations and budgeted amounts provided in pro forma financial projections provided by the Reorganized Debtor to the Plan Administrator on a quarterly basis (the "**Debtor's Projections**"), and the amount of total expenses in each quarter shall conform to the Debtor's Projections, with a 10% permissible variance overall (the "**Permitted Variance**"). The Reorganized Debtor shall provide the Debtor's Projections to the Plan Administrator not later than fifteen (15) days prior to the start of a given quarter. If the Plan Administrator has any questions or objections regarding the Debtor's Projections, the Reorganized Debtor shall make an authorized representative available to meet and confer in good faith with the Plan Administrator within 48 hours regarding any such questions or objections. Any reasonable disputes regarding the Debtor's Projections may be raised by the Plan Administrator by motion to the Bankruptcy Court, and the Bankruptcy Court shall retain exclusive jurisdiction to resolve such disputes and establish the appropriate categorizations and budgeted amounts for use in the Debtor's Projections for the quarter in dispute. If the Reorganized Debtor determines a need to vary from its budgeted expenses in excess of the Permitted Variance in any given quarter, the Reorganized Debtor must provide written notice by email to the Plan Administrator and the Plan Administrator's counsel. If no objection is raised to the proposed variance within 48 hours, the proposed variance will be deemed approved. If the Reorganized Debtor exceeds the Permitted Variance, without consent by the Plan Administrator, which consent shall not be unreasonably withheld, such variance will constitute an event of default under this Article 5.14, unless the Reorganized Debtor has already contributed the maximum GUC Cash Flow Payment for the applicable quarter, in which case exceeding the Permitted Variance shall not be deemed an event of default.

  5.14.4  The Plan Administrator shall make twenty-four (24) consecutive quarterly payments to each Holder of an Allowed Unsecured Claim from the Unsecured Creditors' Fund, each such payment being equal to such Holder's *pro rata* share of the Unsecured Creditors' Fund for the applicable quarter; provided, however, that the Plan Administrator may ensure that the Plan Administrator Reserve Amount is funded prior to making such Distributions. Payments by the Plan Administrator to Holders of Allowed Unsecured Claims shall be made within fifteen (15) days of each GUC Cash Flow Payment made by the Reorganized Debtor into the Unsecured Creditors' Fund (i.e., if the Reorganized Debtor timely pays the first GUC Cash Flow Payment on April 30, 2025, the corresponding payment by the Plan Administrator from the Unsecured Creditors' Fund to Holders of Allowed Unsecured Claims would be made on May 15, 2025). Notwithstanding the foregoing, no Class 14 creditor shall receive more than its Allowed Class 14 Claim.

5.14.5  In addition to the treatment set forth above, (i) the Reorganized Debtor shall make an initial one-time payment to the Unsecured Creditors' Fund in the amount of $300,000.00 ("**Initial GUC Contribution**") within 30 days of the Effective Date; and (ii) on the Effective Date, the Sertant GUC Escrow Payment  ($100,000.00) shall be transferred from the trust account of Committee Counsel to the Unsecured Creditors' Fund (collectively, the "**Unsecured Creditors' Fund Initial Payments**"). From those funds, totaling $400,000.00, the Plan Administrator shall first reserve $50,000.00 to fund the initial Plan Administrator Reserve Amount and make a one-time $350,000.00 Distribution to Holders of Allowed General Unsecured Claims on a *pro rata* basis (the "**Initial GUC Distribution**"). The Plan Administrator shall make the Initial GUC Distribution within 15 days of receiving the Unsecured Creditors' Fund Initial Payments.

5.14.6 Class 14 is Impaired by the Plan.  Each Holder of a Class 14 Claim is entitled to vote to accept or reject the Plan.

5.14.7 Under the Plan, each Holder of an Allowed Class 14 Claim shall also receive its *pro rata* share of the net proceeds of Causes of Action Recoveries, if any.

5.15  **Class 15:  Equity Interests.**

Class 15 comprises all Equity Interests in the Debtor.  As of the Effective Date, Jewell Sumrall will pay the first installment of the New Value Contribution to the Post-Confirmation Estate as set forth in Article 8.5 of the Plan and either (1) retain the Equity Interests in the Reorganized Debtor; or (2) at his option, the Equity Interests in the Debtor may be cancelled, and new common stock issued to the New Equity Holder in the Reorganized Debtor. Jewell Sumrall shall pay the remaining four (4) installments of the New Value Contribution to the Post-Confirmation Estate on each anniversary date of the Effective Date, as set forth in Article 8.5 of the Plan. Such New Value Contribution shall further serve as additional consideration for the injunction in favor of Jewell Sumrall set forth in Article 12.4 of the Plan.

## ARTICLE 6

*[**Intentionally Omitted**]*

## ARTICLE 7
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.1  **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

The Debtor intends to assume the following executory contracts and unexpired leases which are described in its Amended Schedule G:

- Each of the long-term customer contracts described in Amended Schedule G and described in more detail on Exhibit D to Amended Schedule G.
- The lease agreement for real property in Athens, TN with ETFE Rentals.

27

- The lease agreement for real property in Bogalusa, LA with the City of Bogalusa.
- Both of the vehicle leases with Penske (Contract #'s 476708 and 476470).
- All insurance policies owned by the Debtor and any associated premium finance agreements.
- The Sertant MLA, as restructured pursuant to the Global Settlement Agreement as further set forth in Article 7.8 below.

The Debtor rejects all other leases and executory contracts (collectively, the "**Rejected Contracts**").

7.2 **Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases**.

Subject to the Global Settlement Agreement, entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 7.1 hereof, (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 7.1 hereof, and (iii) the extension of time, pursuant to Section 365(d)(4) of the Bankruptcy Code, within which the Debtor may assume, assume and assign, or reject any unexpired lease of nonresidential real property through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired lease. The assumption by the Debtor of an Assumed Contract shall be binding upon any and all parties to such Assumed Contract as a matter of law, and each such Assumed Contract shall be fully enforceable by the Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Plan or an order of the Bankruptcy Court.

7.3 **Inclusiveness.**

Unless otherwise specified, each executory contract and unexpired lease listed above shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affect such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed.

7.4 **Cure of Defaults.**

Except as set forth in the Global Settlement Agreement, any lessor, lessee, or other party to an Assumed Contract (except those lessors, lessees, or other parties whose unexpired leases or executory contracts have been previously assumed by a Final Order of the Bankruptcy Court) asserting a Cure Claim in connection with the assumption of any unexpired lease or executory contract under Article 7.1, as contemplated by Section 365(b) of the Bankruptcy Code, must file such Cure Claim with the Bankruptcy Court on or before the Cure Claim Submission Deadline asserting all alleged amounts accrued or alleged defaults through the Effective Date. Any lessor or other party to an Assumed Contract failing to file a Cure Claim by the Cure Claim Submission

28

Deadline shall be forever barred from asserting, collecting or seeking to collect any amounts or defaults relating thereto against the Debtor or the Reorganized Debtor. The Reorganized Debtor shall have ninety (90) days from the Effective Date to file an objection to any Cure Claim. Any disputed Cure Claims shall be resolved either consensually or by the Bankruptcy Court. Except as may otherwise be agreed to by the parties, by no later than one hundred eighty (180) days following the Effective Date, the Reorganized Debtor shall cure any and all undisputed Cure Claims. All disputed Cure Claims shall be cured either within one hundred twenty (120) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto or as may otherwise be agreed to by the parties.

7.5 **Claims under Rejected Executory Contracts and Unexpired Leases.**

7.5.1 Unless otherwise ordered by the Bankruptcy Court, any Claim for damages arising by reason of the rejection of any executory contract or unexpired lease must be filed with the Bankruptcy Court on or before the Bar Date for rejection damage Claims in respect of such rejected executory contract or unexpired lease or such Claim shall be forever barred and unenforceable against the Debtor or the Reorganized Debtor. With respect to the Rejected Contracts, the Bar Date for filing rejection damage and other Claims with the Bankruptcy Court shall be thirty (30) days after the Confirmation Date. The Plan and any other order of the Bankruptcy Court providing for the rejection of an executory contract or unexpired lease shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

7.5.2 All Claims for damages from the rejection of an executory contract or unexpired lease, once fixed and liquidated by the Bankruptcy Court and determined to be Allowed Claims, shall be Allowed Unsecured Claims in Class 14.

7.6 **Insurance Policies.**

All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as executory contracts under the Plan. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or the Reorganized Debtor may hold against any Person or Entity, including the insurers under any of the Debtor's insurance policies.

7.7 **Indemnification Rights.**

All Claims for indemnification rights against the Debtor by an indemnitee for defense and indemnification shall be reinstated against the Reorganized Debtor and rendered Unimpaired to

the extent that such indemnitee is entitled to defense or indemnification under applicable law, agreement or past policy of the Debtor.

7.8 **Restructured Sertant Lease Obligations.**

The Debtor's obligations to Sertant under the Sertant MLA Documents shall be restructured consistent with the terms of the Global Settlement Agreement. Under the Global Settlement Agreement, the Sertant MLA Documents shall be deemed amended to provide the following:

7.8.1 The Debtor shall pay to Sertant $2,500,000.00, plus interest to accrue at a fixed per annum rate of 10.75%, paid in full in sixty (60) equal monthly installments due on the first (1st) day of each month.

7.8.2 The transaction under the Sertant MLA Documents shall not be deemed to be recharacterized as a secured financing transaction, and the Debtor shall be responsible to pay full sales tax due with each monthly payment made under the Sertant MLA Documents.

7.8.3 During the interim period between the Settlement Date (as defined in the Global Settlement Agreement) and the Confirmation Date, the Debtor will continue making the current monthly lease payments due to Sertant in the amount of $85,666.36. The non-tax portion of each such payment ($78,342.06) will be retained and applied as if it were a Plan payment made pursuant to Article 7.8.1 above. On the Confirmation Date, the payment amount under Article 7.8.1 shall be recalculated taking into account the payments made under this Article 7.8.3.

7.8.4 The Sertant MLA Documents shall remain in full force and effect except as expressly modified by this Article 7.8 or the Global Settlement Agreement.

7.8.5 Upon the payment of all amounts due and owing to Sertant and SMA under the Global Settlement Agreement, Sertant and SMA shall execute documents necessary so as to release their interests in the Scaffolding Equipment (as that term is defined in the Global Settlement Agreement) and the Sertant MLA Documents, and shall execute and deliver to the Debtor a bill of sale effective to transfer title to all Scaffolding Equipment owned by Sertant to the Debtor on an "as is, where is, with all faults" basis, without representation or warranty, express or implied in accordance with Paragraph 11 of the Global Settlement Agreement.

# ARTICLE 8
## ACCEPTANCE OR REJECTION OF THE PLAN

8.1 **Each Impaired Class Entitled to Vote Separately.**

Except as otherwise provided in Article 8.4, the Holders of Claims or Equity Interests in each Impaired Class of Claims or Impaired Class of Equity Interests shall be entitled to vote separately to accept or reject the Plan.

30

8.2 **Acceptance by Impaired Classes.**

Classes 1-10 and 12-15 are Impaired under the Plan, and Holders of Claims in such Classes are entitled to vote to accept or reject the Plan. Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan. Pursuant to Section 1126(d) of the Bankruptcy Code, an Impaired Class of Equity Interests shall have accepted the Plan if the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.

8.3 **Presumed Acceptance of Plan by Unimpaired Classes.**

Class 11 is not impaired. Pursuant to Section 1126(f) of the Bankruptcy Code, any Unimpaired Classes and the Holders of Claims and Equity Interests in such Classes are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan. Accordingly, votes of Holders of Class 11 Claims are not being solicited by the Plan Proponents. Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Plan Proponents in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

8.4 **Impairment Controversies.**

If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

8.5 **Issuance of Reorganized Debtor Equity Interests**

Jewell Sumrall shall pay the New Value Contribution into the Post-Confirmation Estate in five (5) equal annual installments of $50,000.00, beginning on the Effective Date and continuing on the anniversary of the Effective Date for the subsequent four (4) years. On the Effective Date, and contingent upon Jewell Sumrall's timely payment of the first installment of the New Value Contribution, he may either (1) retain the Equity Interests in the Reorganized Debtor; or (2) at his option, the Reorganized Debtor shall issue and distribute, in accordance with the provisions of the Plan, the Reorganized Debtor Interests to the New Equity Holder.

31

## ARTICLE 9
## MEANS OF IMPLEMENTATION OF THE PLAN OF OPERATIONS

9.1     General Overview of the Plan of Operations.

The Plan provides for the continued operation of the Debtor as the Reorganized Debtor. The Plan provides for Cash payments to Holders of Allowed Claims, except Holders of Equity Interests all as more particularly described in Articles 4 and 5 of the Plan.  The Plan also provides for the creation and implementation of the Post-Confirmation Estate, which shall be managed by the Plan Administrator to collect payments from the Debtor as set forth in Section 5.14 of the Plan, maintain the Unsecured Creditors' Fund, and pursue the Causes of Action.

9.2     Effective Date Actions.

9.2.1     Subject to the approval of the Bankruptcy Court and the satisfaction or waiver of the conditions precedent to the occurrence of the Effective Date contained in Article 11.2 of the Plan, on or as of the Effective Date, the Plan shall be implemented and the following actions shall thereafter immediately occur:

9.2.1.1 The Reorganized Debtor shall make the Initial Distribution as provided in Article 10.1 of the Plan; and

9.2.1.2 The Reorganized Debtor shall carry out its other Effective Date responsibilities under the Plan, including the execution and delivery of all documentation contemplated by the Plan and the Plan Documents, if any.

9.2.1.2 The appointment of the Plan Administrator shall become effective and the Post-Confirmation Estate shall be a continuation of the Estate and receive the Causes of Action, which shall be vested in the Post-Confirmation Estate under the Plan. The Plan Administrator shall be automatically substituted for the Debtor as a party to all contested matters, adversary proceedings, and lawsuits, both within and outside of the Bankruptcy Court, involving the assets of the Post-Confirmation Estate.

9.3     Vesting of Property of the Estate in the Reorganized Debtor.

On the Effective Date, except as otherwise expressly provided in the Plan, all Property of the Estate (including but not limited to, any net operating losses, and, subject to the Global Settlement Agreement, all scaffolding equipment used by the Debtor in the operation of its business as of the Effective Date), except for the Causes of Action, Initial GUC Contribution, GUC Net Cash Flow Payments, and New Equity Contribution (which comprise the Post-Confirmation Estate), shall vest in the Reorganized Debtor free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide.  The Reorganized Debtor intends to preserve net operating losses to the maximum extent permitted under applicable law.  As of the Effective Date,

the Reorganized Debtor may operate its business and use, acquire, and dispose of its Property, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.   All privileges with respect to the Property of the Debtor's Estate vested in the Reorganized Debtor pursuant to this Article 9.3, including the attorney/client privilege, to which the Debtor is entitled shall automatically vest in, and may be asserted by or waived on behalf of, the Reorganized Debtor.

9.4    <u>Vesting of the Causes of Action in the Post-Confirmation Estate</u>.

On the Effective Date, except as otherwise expressly provided in the Plan, all Causes of Action shall vest in, and become assets of, the Post-Confirmation Estate, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature, and the Confirmation Order shall so provide.

9.5    <u>Continued Corporate Existence; Dissolution</u>.

The Debtor will continue to exist after the Effective Date as a separate limited liability company, with all of the powers of a limited liability company under Louisiana Law and pursuant to its organizational documents in effect prior to the Effective Date, except to the extent such organizational documents are amended or amended and restated as provided in the Plan or the Confirmation Order, without prejudice to any right to terminate such existence (whether by merger, dissolution or otherwise) under applicable law after the Effective Date.

9.6    <u>Corporate Action and Name Change</u>.

All matters provided for under the Plan involving the corporate or company structure of the Debtor or the Reorganized Debtor, or any corporate or company action to be taken by or required of the Debtor or the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the Member and Manager of the Debtor or the Reorganized Debtor. This includes the possibility that the Debtor may change its corporate name.

9.7    <u>Management of the Reorganized Debtor</u>.

9.7.1    Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, as of the Effective Date, Jewell Sumrall, the President of the Debtor immediately prior to the Effective Date, shall be deemed to be the President of the Reorganized Debtor without any further action by any party.   The Reorganized Debtor shall continue paying Mr. Sumrall compensation of $260,000 per year and paying his health insurance premiums. During the Plan term, Mr. Sumrall's compensation from the Reorganized Debtor shall be limited to $260,000 per year and payment of his health insurance premiums. Mr. Sumrall's compensation may be increased to accommodate an increase in reasonable cost of living expenses with the consent of the Plan Administrator, which consent shall be in the Plan Administrator's sole discretion. In the event the Reorganized Debtor or Mr. Sumrall dispute the Plan Administrator's

33

withholding of consent under this Article 9.7.1, they shall be entitled to file a motion with the Bankruptcy Court seeking approval of the proposed increase in compensation.

9.7.2   On and after the Effective Date, the operations of the Reorganized Debtor shall continue to be the responsibility of the President.  The President of the Reorganized Debtor shall serve from and after the Effective Date until his successor is duly appointed and qualified or until his or her earlier resignation or removal in accordance with the organizational documents of the Reorganized Debtor.

9.7.3   From and after the Confirmation Date, the President shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order on behalf of the Reorganized Debtor.

9.7.4 The Reorganized Debtor, without the consent of the Plan Administrator which shall not be unreasonably withheld, shall not incur any further indebtedness out of the ordinary course of business, which means, for purposes of this Plan, loans with an outstanding balance exceeding $500,000.00 in aggregate, across all post-Effective Date loans, at any given time within the Plan term, loans from merchant cash advance lenders, factoring, sales of accounts receivable, or sale-lease back arrangements, until the Reorganized Debtor has fulfilled the requirements of the Plan.

9.8   <u>Section 1146 Exemption</u>.

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, distribution, transfer or exchange of any Security, or the making, delivery or recording of any instrument of transfer, pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or the vesting, re-vesting, transfer or sale of any Property of, by or in the Debtor or its Estate or the Reorganized Debtor pursuant to, in implementation of or as contemplated by the Plan or any Plan Document, or any transaction arising out of, contemplated by or in any way related to the foregoing, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for

filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 9.9 Selection of the Plan Administrator.

The initial Plan Administrator shall be appointed by the Bankruptcy Court at the Confirmation Hearing. The Plan Administrator shall serve from and after the Effective Date until his or her successor is duly appointed and qualified or until his or her earlier death, resignation, or removal. In the event of the death, resignation or removal of the Plan Administrator, any successor thereto shall be selected following notice to the Notice Parties and a hearing before the Bankruptcy Court.

### 9.10 Indemnification and Limitation of Liability of Plan Administrator.

The Plan Administrator shall be indemnified by and be entitled to receive reimbursement from the Post-Confirmation Estate, upon approval by the Bankruptcy Court, against and from any and all loss, cost, expense, liability or damage which the Plan Administrator may actually incur or sustain in the exercise and performance of any of the powers and duties under this Plan, excepting those acts of the Plan Administrator arising from his or her own gross negligence, fraud, or willful misconduct. The Plan Administrator shall not have any personal obligation to satisfy any liability of the Debtor or its Estate. With the exception of acts of the Plan Administrator arising from his or her own gross negligence, fraud, or willful misconduct, no recourse shall ever be had, directly or indirectly, against the Plan Administrator, individually, or his or her representatives, agents, or professionals, by legal or equitable proceedings or by virtue of any statute or otherwise, or any acts taken by the Plan Administrator under the Plan.

### 9.11 Powers and Limitations of Plan Administrator.

9.11.1 The Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Plan and in the Confirmation Order. The responsibilities of the Plan Administrator shall include (i) the receipt, management, supervision, and protection of the assets of the Post-Confirmation Estate on behalf of and for the benefit of the Unsecured Creditors, including authority to establish such accounts as the Plan Administrator deems appropriate and to make all Distributions required of the Plan Administrator under the Plan; (ii) the investigation, analysis, prosecution and, if necessary and appropriate, compromise of the Causes of Action; (iii) the marketing, selling, leasing, or otherwise disposing of any of the assets the Post-Confirmation Estate may acquire (i.e., through the pursuit of Causes of Action); (iv) filing any required tax returns and paying taxes and all other obligations of the Post-Confirmation Estate; and (v) such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan, by orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

9.11.2 The Plan Administrator shall be deemed to be for all purposes the "representative" of the Post-Confirmation Estate as set forth in Section 1123(b)(3)(B) of the Bankruptcy Code to retain, enforce, settle and prosecute all Causes of Action. The Plan Administrator shall use his or her best efforts to promptly liquidate the assets of the Post-

Confirmation Estate as soon as practicable at minimal cost and to distribute the proceeds thereof (including any Causes of Action Recoveries and payments received into the Unsecured Creditors' Fund) as soon as practicable pursuant to this Plan. The powers of the Plan Administrator shall include the power to (i) invest funds; (ii) make Distributions to Class 14 Holders of General Unsecured Claims; (iii) pay taxes and other obligations owed by the Post-Confirmation Estate; (iv) engage and compensate, from the assets of the Post-Confirmation Estate, consultants, agents, employees and professional persons to assist the Plan Administrator with respect to the Plan Administrator's responsibilities; (v) retain and compensate, from the assets of the Post-Confirmation Estate, the services of experienced auctioneers, brokers, and/or marketing agents to assist and/or advise in the sale or other disposition of the assets of the Post-Confirmation Estate; (vi) liquidate and dispose of the assets of the Post-Confirmation Estate; (vii) prosecute, compromise and settle Causes of Action, with approval of the Bankruptcy Court being required only as stated in the Plan or in the Confirmation Order; (viii) act on behalf of the Post-Confirmation Estate in all adversary proceedings and contested matters pending in the Bankruptcy Court and in all actions and proceedings pending elsewhere, including any appeals; (ix) commence and/or pursue any and all Causes of Action involving assets of the Post-Confirmation Estate that could arise or be asserted at any time, unless otherwise waived or relinquished in this Plan or in a Final Order of the Bankruptcy Court; (x) sue and be sued, including the filing and defending of any contested matters and adversary proceedings in the Bankruptcy Court involving the Post-Confirmation Estate and actions or other proceedings in any other court, and pursue or defend any appeal from any judgment or order therefrom; (xi) utilize assets of the Post-Confirmation Estate to purchase appropriate insurance to insure the acts and omissions of the Plan Administrator; (xii) act and implement this Plan and orders of the Bankruptcy Court; (xiii) monitor the Reorganized Debtor's financial performance, its Quarterly Net Cash Flow and compliance with the Plan; and (xiv) enforce the obligations of the Reorganized Debtor under the Plan on behalf of Class 14 Holders of General Unsecured Claims by issuing default notices when appropriate, confirming cure payments are made, performing duties with respect to the Debtor's Projections set forth in Article 5.14 of the Plan, and pursuing remedies set forth in Article 12 of the Plan if defaults are not timely cured. The Plan Administrator shall exercise such powers in accordance with the provisions of this Plan and the Confirmation Order. The Plan Administrator shall be entitled to retain any of the Professionals, in his or her sole discretion, that have been employed by the Debtor or Committee or other parties in interest in the Bankruptcy Case. The Plan Administrator shall obtain the approval of the Bankruptcy Court prior to retention and engagement of any professional who has not previously been approved by the Bankruptcy Court as a professional for the Debtor or Committee in the Bankruptcy Case. The provision of services by a Professional to the Debtor or the Committee in the Bankruptcy Case shall not disqualify such Professional from employment by the Plan Administrator.

9.11.3 The Plan Administrator shall not do any act or undertake any activity unless it determines, in good faith, that such act or activity is desirable, necessary or appropriate for the management, conservation, and protection of the Post-Confirmation Estate.

9.11.4 The Plan Administrator shall not be deemed to make any representations or warranties as to the value or condition of the assets of the Debtor's Estate, or as to the validity, execution, enforceability, legality, or sufficiency of this Plan, and the Plan Administrator shall incur no liability or responsibility in respect of such matters. Persons dealing with the Plan

Administrator shall look only to the assets of the Post-Confirmation Estate to satisfy any liability incurred by the Plan Administrator to such Person in carrying out the terms of this Plan, and the Plan Administrator shall have no personal or individual obligation to satisfy any such liability, unless it is proven that the Plan Administrator was grossly negligent or acted with willful misconduct in ascertaining the pertinent facts or in performing any of the rights, powers or duties hereunder.

    9.12   <u>Compensation of Plan Administrator</u>.

       9.12.1  The initial compensation of the Plan Administrator shall be on an hourly rate basis as approved by the Bankruptcy Court, plus reimbursement for actual, reasonable and necessary expenses incurred by the Plan Administrator, and such amounts shall be paid by the Post-Confirmation Estate. The Plan Administrator shall not be entitled to increase such hourly rate absent an order of the Bankruptcy Court. From and after the Effective Date, any professionals engaged or retained by the Plan Administrator shall be entitled to reasonable compensation to perform services for the Plan Administrator. The fees and expenses of the Plan Administrator and any professionals employed by the Plan Administrator shall be subject to review and approval by the Bankruptcy Court. Unless otherwise provided in an order of the Bankruptcy Court, the Plan Administrator and any professionals engaged or retained by the Plan Administrator shall be required to file interim applications for approval of fees and expenses with the Bankruptcy Court every one hundred and twenty (120) days following the Effective Date.

       9.12.2   Subject to Bankruptcy Court approval, all costs and expenses and obligations incurred by the Plan Administrator in administrating the Plan or any manner connected, incidental, or related thereto shall be a claim against the Post-Confirmation Estate, including payments to the Plan Administrator for its services as Plan Administrator.

    9.13   <u>Resignation of Plan Administrator</u>.  The Plan Administrator shall, after written notice filed with the Bankruptcy Court, be entitled to resign as Plan Administrator for any reason. The Plan Administrator shall be obligated to perform its duties under this Plan and shall be entitled to compensation (under terms previously approved by the Bankruptcy Court) through and including the date a replacement is approved by the Bankruptcy Court.  In the event of such resignation, the Plan Administrator shall file a notice of replacement Plan Administrator with the Bankruptcy Court, whose appointment shall be subject to Bankruptcy Court approval.

    9.14   <u>Bond Required of Plan Administrator</u>.  The Plan Administrator shall be required to give a bond for the performance of its duties, and the amount of the bond shall be set by the Bankruptcy Court.  All costs and expenses of procuring any such bond shall be paid by the Post-Confirmation Estate.

    9.15   <u>Establishment of Plan Administrator Account</u>.  As soon as reasonably practicable (as determined by the Plan Administrator) after the Effective Date, the Plan Administrator shall deposit the initial Plan Administrator Reserve Amount into the Plan Administrator Account.  The Plan Administrator shall be entitled to always maintain a reserve balance in the Plan Administrator Account equal to the Plan Administrator Reserve Amount.

9.16 <u>Deposits and Disbursements as to Plan Administrator Reserve Account</u>. Upon the receipt by the Plan Administrator of any Cash assets, including any GUC Cash Flow Payments and any Causes of Action Recoveries, the Plan Administrator shall promptly deposit such Cash assets into the Plan Administrator Reserve Account and be maintained and accounted for as part of the Unsecured Creditors' Fund. If, at the end of any calendar month following the Effective Date, the balance in the Plan Administrator Reserve Account exceeds the Minimum Reserve Balance by $25,000.00, the Plan Administrator may transfer such excess balance to such distribution accounts as the Plan Administrator deems appropriate. The Plan Administrator shall send the Reorganized Debtor an annual accounting of all Causes of Action Recoveries and disbursements made from the Unsecured Creditors' Fund on the anniversary of the Effective Date of the Plan by email to Jewell Sumrall.

9.17 <u>Dissolution of the Committee</u>. Upon the Effective Date, the Committee shall be dissolved.

9.18 <u>Pursuit of Causes of Action</u>.

9.18.1 On the Effective Date, the Causes of Action shall be vested in the Post-Confirmation Estate for the benefit of the Unsecured Creditors, except to the extent a Creditor or other third party has been specifically released from any Cause of Action by the terms of the Plan or by a Final Order of the Bankruptcy Court. The Plan Proponents are currently not in a position to express an opinion on the merits of any of the Causes of Action or on the recoverability of any amounts as a result of any such Causes of Action. For purposes of providing notice, the Plan Proponents state that any party in interest that engaged in business or other transactions with the Debtor Pre-petition or that received payments from the Debtor Pre-petition may be subject to litigation to the extent that applicable bankruptcy or non-bankruptcy law supports such litigation. The Post-Confirmation Estate will fund the costs and expenses (including legal fees) to pursue the Causes of Action.

9.18.2 No Creditor or other party should vote for the Plan or otherwise rely on the Confirmation of the Plan or the entry of the Confirmation Order in order to obtain, or on the belief that it will obtain, any defense to any Cause of Action. No Creditor or other party should act or refrain from acting on the belief that it will obtain any defense to any Cause of Action. ADDITIONALLY, THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSES OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE POST-CONFIRMATION ESTATE AND PLAN ADMINISTRATOR. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are vested in the Post-Confirmation Estate under the Plan for prosecution by the Plan Administrator unless a Final Order of the Bankruptcy Court authorizes the Debtor or the Plan Administrator, as the case may be, to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or Plan Administrator, as the case may be, does not possess or does not intend to prosecute a particular claim or Cause of Action if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and

rights of action of the Debtor, whether now known or unknown, for the benefit of the Post-Confirmation Estate. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Post-Confirmation Estate, as a result of such failure, be estopped or precluded under any theory from pursuing such Cause of Action. Nothing in the Plan operates as a release of any of the Causes of Action.

9.18.3  The Plan Proponents do not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors are advised that the Plan Administrator will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept the Plan by any Creditor nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity, unless such Creditor, Person or Entity is specifically identified by name as a released party in the Plan, in the Confirmation Order, or in any other Final Order of the Bankruptcy Court. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any *res judicata* or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Causes of Action following Confirmation of the Plan.

9.18.4  The Debtor, the Reorganized Debtor, and the Plan Administrator reserve all rights under Section 506(c) of the Bankruptcy Code with respect to any and all Secured Claims.

9.18.5  The Estate shall remain open as the Post-Confirmation Estate, even if the Bankruptcy Case shall have been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the Causes of Action Recoveries have been received by the Plan Administrator and the Post-Confirmation Estate.

9.19  Prosecution and Settlement of Claims and Causes of Action.

The Plan Administrator (a) may commence or continue in any appropriate court or tribunal any suit or other proceeding for the enforcement of any Cause of Action which the Debtor has or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action. From and after the Effective Date, the Plan Administrator shall be authorized, pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code, to compromise and settle any Cause of Action or objection to a Claim in accordance with the following procedures, which shall constitute sufficient notice in accordance with the Bankruptcy Code and the Bankruptcy Rules for compromises and settlements: (i) if the resulting settlement provides for settlement of a Cause of Action or objection to a Claim originally asserted in an amount equal to or less than $25,000.00, then the Plan Administrator may settle the Cause of Action or objection to Claim and execute necessary documents, including a stipulation of settlement or release, subject to notifying the Notice Parties of the terms of the settlement agreement; provided, however, that if the Notice Parties indicate their approval or do not provide the Plan Administrator with an objection to the proposed settlement within 10 days after it receives notice of such settlement in writing, then the Plan Administrator shall be authorized to accept and consummate the settlement; and provided further, however, that if a timely written objection is made by the Notice Parties to the proposed settlement, then the settlement may not be consummated without approval of the Bankruptcy Court

in accordance with Bankruptcy Rule 9019; and (ii) if the resulting settlement involves a Cause of Action or objection to a Claim originally asserted in an amount exceeding $25,000.00, then the Plan Administrator shall be authorized and empowered to settle such Cause of Action or objection to Claim only upon Bankruptcy Court approval in accordance with Bankruptcy Rule 9019 and after notice to the Notice Parties.

9.20    Effectuating Documents; Further Transactions.

Prior to the Effective Date, the President of the Debtor (and, on and after the Effective Date, the President of the Reorganized Debtor) shall be authorized to execute, deliver, file, or record such Plan Documents, including, without limitation, contracts, instruments, releases, mortgages, and other agreements or documents, and take such actions as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan or to otherwise comply with applicable law.

9.21    Privileges of Debtor.

On the Effective Date, all of the Debtor's privileges, including, but not limited to, corporate privileges, confidential information, work product protections, attorney-client privileges, and other immunities or protections (the "**Privileges**") shall be transferred, assigned and delivered to the Reorganized Debtor, without waiver, limitation or release, and shall vest with the Reorganized Debtor. The Reorganized Debtor shall hold, and be the beneficiary of, all Privileges and shall be entitled to assert all Privileges on and after the Effective Date, and the Reorganized Debtor shall be entitled to assert such privilege and immunity to the same extent that the Debtor or the Estate was entitled to do so prior to the Effective Date. For purposes of clarity, this Section is not intended to expand or restrict the rights, if any, of third parties to their own privileges or any common interest or joint privileges. Such privileges, if any, are not waived or transferred by this provision. Notwithstanding anything herein to the contrary, the privilege related to the Causes of Action shall be held jointly by the Reorganized Debtor and the Plan Administrator.

## ARTICLE 10
## PROVISIONS GOVERNING DISTRIBUTIONS

10.1    Initial Distribution.

As soon as reasonably practicable (as determined by the Reorganized Debtor) after the Effective Date but no later than thirty (30) days after the Effective Date, the Reorganized Debtor shall make the distributions required under the Plan to Holders of Allowed Administrative Expense Claims and the Initial GUC Contribution to the Post-Confirmation Estate (collectively, the "**Initial Distribution**"). The Reorganized Debtor shall make Distributions to Holders of Allowed Claims as and when required by the terms of the Plan, and shall make the GUC Cash Flow Payments to the Plan Administrator for the Unsecured Creditors' Fund as set forth in Article 5.14 of the Plan.

10.2    Determination of Claims.

10.2.1 From and after the Effective Date, the Plan Administrator shall have the exclusive authority to, and shall, file, settle, compromise, withdraw, or litigate to judgment all objections to Claims.  Except as to any late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases, if any, all objections to Claims shall be filed with the Bankruptcy Court by no later than ninety (90) days following the Effective Date (unless such period is extended by the Bankruptcy Court upon motion of the Plan Administrator), and the Confirmation Order shall contain appropriate language to that effect. Holders of Unsecured Claims that have not filed such Claims on or before the Bar Date shall serve the Notice Parties with any request to the Bankruptcy Court for allowance to file late Unsecured Claims.  If the Bankruptcy Court grants the request to file a late Unsecured Claim, such Unsecured Claim shall be treated in all respects as a Class 14 Unsecured Claim. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed (unless such period is extended by the Bankruptcy Court upon motion of the Plan Administrator) on the later of (a) 90 days following the Effective Date or (b) the date 60 days after Plan Administrator receives actual notice of the filing of such Claim.

10.2.2 Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the Holder of the Claim if the Debtor or Plan Administrator, as the case may be, effect service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, (b) to the extent counsel for the Holder of a Claim is unknown, by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified on the Proof of Claim or any attachment thereto, or (c) by first class mail, postage prepaid, on any counsel that has filed a notice of appearance in the Bankruptcy Case on behalf of the Holder of a Claim.

10.2.3 Disputed Claims shall be fixed or liquidated in the Bankruptcy Court as core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(B) unless the Bankruptcy Court orders otherwise.  If the fixing or liquidation of a contingent or unliquidated Claim would cause undue delay in the administration of the Bankruptcy Case, such Claim shall be estimated by the Bankruptcy Court for purposes of allowance and Distribution.  The Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. The determination of Claims in Estimation Hearings shall be binding for purposes of establishing the maximum amount of the Claim for purposes of allowance and Distribution.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Procedures for specific Estimation Hearings, including provisions for

discovery, shall be set by the Bankruptcy Court giving due consideration to applicable Bankruptcy Rules and the need for prompt determination of the Disputed Claim.

    10.3    Distributions as to Allowed Claims in Class 14

        10.3.1  Each Holder of an Allowed Unsecured Claim in Class 14 shall receive a Cash Distribution in the amount provided for in Article 5 of the Plan.

        10.3.2  Notwithstanding any provision herein to the contrary, no Distribution shall be made to the Holder of a Disputed Claim in Class 14 unless and until such Disputed Claim becomes an Allowed Claim.  If, on any applicable Distribution Date, any Disputed Claims in Class 14 remain, then the Plan Administrator shall withhold from any Distribution to the Holders of Allowed Class 14 Claims the amount of funds that would be necessary to make the same proportionate distribution to the Holders of all Class 14 Claims which are Disputed Claims as if each such Disputed Claim were an Allowed Class 14 Claim.  At such time that such Disputed Claim becomes an Allowed Class 14 Claim, the Holder of such Allowed Class 14 Claim shall receive the Distribution to which such Holder is then entitled under the Plan.

        10.3.3  Notwithstanding any provision herein to the contrary, if, on any applicable Distribution Date, the Holder of a Class 14 Claim is subject to a proceeding against it by the Plan Administrator under Section 502(d) of the Bankruptcy Code, then the Plan Administrator (in its sole discretion) may withhold a Distribution to such Holder until the final resolution of such proceeding.

        10.3.4  Distributions to a Holder of an Allowed Claim in Class 14 shall be made at the address of such Holder set forth in the Schedules or on the books and records of the Debtor or the Plan Administrator at the time of the Distribution, unless the Plan Administrator has been notified in writing of a change of address, including by the filing of a Proof of Claim or statement pursuant to Bankruptcy Rule 3003 by such Holder that contains an address for such Holder different than the address for such Holder as set forth in the Schedules.  The Plan Administrator shall not be liable for any Distribution sent to the address of record of a Holder in the absence of the written change thereof as provided herein.

    10.4    Unclaimed Distributions.

        10.4.1  If the Holder of an Allowed Claim fails to negotiate a check for a Distribution issued to such Holder within sixty (60) days of the date such check was issued, then the Reorganized Debtor may provide written notice to such Holder stating that, unless such Holder negotiates such check within thirty (30) days of the date of such notice, (i) the amount of Cash attributable to such check shall be deemed to be unclaimed and such Holder shall be deemed to have no further Claim in respect of such check, and (ii) such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

        10.4.2  If a check for a Distribution made pursuant to the Plan to any Holder of an Allowed Claim is returned to the Reorganized Debtor due to an incorrect or incomplete address for the Holder of such Allowed Claim, and no claim is made in writing to the Reorganized Debtor

as to such check within sixty (60) days of the date such Distribution was made, then the amount of Cash attributable to such check shall be deemed to be unclaimed, such Holder shall be deemed to have no further Claim in respect of such check, such Holder's Allowed Claim shall no longer be deemed to be Allowed, and such Holder shall not be entitled to participate in any further Distributions under the Plan in respect of such Claim.

10.4.3 Any unclaimed Distribution as described above sent by the Reorganized Debtor shall become the property of the Reorganized Debtor. Any unclaimed Distribution as described above sent by the Plan Administrator shall become part of the Unsecured Creditors' Fund and shall be subject to re-distribution to Holders of Allowed Class 14 Unsecured Claims along with the next subsequent Distribution by the Plan Administrator.

10.5    Transfer of Claim.

In the event that the Holder of any Claim shall transfer such Claim on and after the Effective Date, such Holder shall immediately advise the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of such transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor shall have received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers of the transferor under the Plan.

10.6    One Distribution Per Holder.

If the Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of Distribution hereunder, and only one Distribution shall be made with respect to the single aggregated Claim.

10.7    Effect of Pre-Confirmation Distributions.

Nothing in the Plan shall be deemed to entitle the Holder of a Claim that received, prior to the Effective Date, full or partial payment of such Holder's Claim, by way of settlement or otherwise, pursuant to an order of the Bankruptcy Court, provision of the Bankruptcy Code, or other means, to receive a duplicate payment in full or in part pursuant to the Plan; and all such full or partial payments shall be deemed to be payments made under the Plan for purposes of satisfying the obligations of the Debtor or Reorganized Debtor to such Holder under the Plan.

10.8    No Interest on Claims.

Except as expressly stated in the Plan or otherwise Allowed by a Final Order of the Bankruptcy Court, no Holder of an Allowed Claim shall be entitled to the accrual of Post-petition interest or the payment of Post-petition interest, penalties, or late charges on account of such Allowed Claim for any purpose. Additionally, and without limiting the foregoing, interest shall

not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a Disputed Claim becomes an Allowed Claim.

10.9    Compliance with Tax Requirements.

In connection with the Plan, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities, and all Distributions hereunder shall be subject to such withholding and reporting requirements. Notwithstanding the above, each Holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

10.10   Additional Tax Provisions- Federal.

Notwithstanding any provisions in this Plan to the contrary, the following shall apply to Post-petition federal tax returns and tax debts owed to the IRS:

10.10.1    If Debtor fails to make payment of any tax due after the Final Decree Date to the IRS within 10 days of the due date of such deposit or payment, or if Debtor or the successor in interest fails to file any required federal tax return by the due date of such return, provided that the return is due after the Final Decree Date, then the United States may declare that Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

10.10.2    If the United States declares Debtor or the successors in interest to be in default of Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to Debtor or the successor in interest.

10.10.3    If full payment is not made within 10 days of such demand, then the IRS may collect any unpaid liabilities through the administrative collection provisions of Title 26 of the United States Code.

10.10.4    In the event Debtor fails to make any Plan payment within 10 days of the due date of such deposit or payment, the stay will be deemed terminated, without further hearing, and the IRS will be entitled to pursue administrative collection.

10.10.5    The Administrative Expense Claim Bar Date does not apply to Post-petition taxes which will be paid no later than the Effective Date.

10.11   Additional Tax Provisions – State.

10.11.1    Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Holders of

44

Allowed Priority Tax Claims and Allowed Secured Tax Claims other than the United States and IRS (collectively, the "**Taxing Authorities**"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff or recoupment rights of the Taxing Authorities in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Taxing Authorities to pursue any non-Debtor third parties for tax Debts or Claims, and the Taxing Authorities specifically opt out of, and shall not be bound by, any third party release(s), if any, in the Plan; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Taxing Authorities Administrative Expense Claims; (4) to the extent that interest is payable with respect to any Administrative Expense, Priority or Secured Tax Claim of the Taxing Authorities, the interest rate shall be the applicable statutory interest rate for the State in which the Taxing Authority has jurisdiction; and (5) nothing provided in the Plan or Confirmation Order impacts the Governmental Unit Bar Date, and Taxing Authorities may amend their Claims at any point.

10.11.2     The Taxing Authorities shall not be required to file any Proof of Claim, motion, or request for payment to be paid for any Administrative Expense Claims. The Taxing Authorities shall not be required to file any Proof of Claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtor's business, including all Post-petition taxes incurred by the Debtor after the Petition Date. All Post-petition taxes owed to the Taxing Authorities shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed to in writing by the applicable Taxing Authorities. If any Post-petition taxes or Administrative Expense Claims owed to the Taxing Authorities are not due on the Effective Date, then such Post-petition taxes or Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.

10.11.3     All Priority Tax Claims and Secured Tax Claims owed to the Taxing Authorities shall be paid in full either (1) on the Effective Date; (2) in consecutive equal monthly installments of principal and interest no later than sixty (60) months of the Petition Date, with the first payment due on the Effective Date; or (3) as otherwise agreed to by each Taxing Authority. The Taxing Authorities' Allowed Priority Tax Claims and Allowed Secured Tax Claims shall accrue interest at the applicable statutory rate of interest for the State in which the respective Taxing Authority has jurisdiction. Taxing Authorities who are Holders of Allowed Secured Tax Claims shall retain their respective tax (s) until such time as payment is made in full pursuant to the terms of the Plan. Upon payment in full pursuant to the terms of the Plan, and if at that time all liabilities due and owing to a Taxing Authority are current, then such Taxing Authority will release its lien(s).

10.11.4     A failure by the Debtor or Reorganized Debtor to make a Plan payment to a Taxing Authority shall be an event of default under the Plan. If the Debtor or Reorganized Debtor fails to cure an event of default as to a Taxing Authority within five (5) days after service of a written notice of default by email to counsel for Debtor at agarrett@silvervoit.com, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court. The Debtor and/or Reorganized Debtor can receive up to three (3) notices of default, however, the third default cannot be cured. The Taxing Authorities preserve all available bankruptcy and state law remedies, if any, in the

event of default of payment on claims as laid out herein above. No event of default hereunder is waived by the failure of the respective Taxing Authority to contemporaneously send such written notice.

   10.11.5  Debtor shall file all delinquent sales tax, franchise tax, or unemployment tax returns on or before Effective Date. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the Debtor will retain documents for the applicable inspection periods set forth in each State in which the Taxing Authorities have jurisdiction (or for any pending audits, the later of four (4) years or the time any and all claim(s) based on such audit are resolved).

## ARTICLE 11
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THE PLAN AND THE EFFECTIVE DATE

11.1  <u>Conditions Precedent to Confirmation of the Plan</u>.

   As a condition precedent to Confirmation of the Plan, which may be waived by the Plan Proponents, the Bankruptcy Court shall have made such findings and determinations regarding the Plan as shall enable the entry of the Confirmation Order in a manner consistent with the provisions of the Plan.

11.2  <u>Conditions Precedent to the Effective Date</u>.

   The Plan shall not be consummated and the Effective Date shall not occur unless the Confirmation Order, in form and substance satisfactory to the Plan Proponents, shall be a Final Order.

## ARTICLE 12
## DISCHARGE, EXCULPATION FROM LIABILITY,
## RELEASE, AND GENERAL INJUNCTION

12.1  <u>Discharge of Claims</u>.

   Except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall operate as a discharge, pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by applicable law, as of the Effective Date, of the Debtor and its Estate and the Reorganized Debtor from any and all Debts of and Claims of any nature whatsoever against the Debtor that arose at any time prior to the Effective Date, including any and all Claims for principal and interest, whether accrued before, on or after the Petition Date. Except as otherwise expressly provided in the Plan or in the Confirmation Order, but without limiting the generality of the foregoing, on the Effective Date, the Debtor and its Estate and the Reorganized Debtor, and their respective successors or assigns, shall be discharged, to the fullest extent

46

permitted by applicable law, from any Claim or Debt that arose prior to the Effective Date and from any and all Debts of the kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based on such Debt was filed pursuant to Section 501 of the Bankruptcy Code, (b) a Claim based on such Debt is an Allowed Claim pursuant to Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based on such Debt has voted to accept the Plan. As of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons and Entities, including all Holders of Claims or Equity Interests, shall be forever precluded and permanently enjoined to the fullest extent permitted by applicable law from asserting directly or indirectly against the Debtor or its Estate or the Reorganized Debtor, or any of their respective successors and assigns, or the assets or Properties of any of them, any other or further Claims, Debts, rights, causes of action, remedies, or Liabilities based upon any act, omission, document, instrument, transaction, event, or other activity of any kind or nature that occurred prior to the Effective Date or that occurs in connection with implementation of the Plan, and the Confirmation Order shall contain appropriate injunctive language to that effect. As of the Effective Date, Holders of Equity Interests shall have no rights arising from or relating to such Equity Interests, except as otherwise expressly provided in the Plan. In accordance with the foregoing, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Confirmation Order shall be a judicial determination of the discharge or termination of all such Claims and other Debts and Liabilities against the Debtor, pursuant to Sections 524 and 1141 of the Bankruptcy Code, to the fullest extent permitted by applicable law, and such discharge shall void any judgment obtained against the Debtor, at any time, to the extent that such judgment relates to a discharged or terminated Claim, Liability, or Debt. Notwithstanding the foregoing, Reorganized Debtor shall remain obligated to make payments to Holders of Allowed Claims as required pursuant to the Plan.

12.2 **Exculpation from Liability.**

**The Debtor, its President and other officers, and its Member, and the Committee, along with the attorneys, agents, successors, and assigns of each of the foregoing, and the Professionals for the Debtor and the Committee (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, or confirmation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation from liability provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Bankruptcy Case. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The rights granted under this Article 12.2 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest**

protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.

12.3     **General Injunction.**

Pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or Entities that have held, currently hold or may hold a Claim, Debt, or Liability that is discharged or terminated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such discharged or terminated Claims, Debts, or Liabilities, other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents:  (a) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor or their respective Properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor or their respective Properties; (c) creating, perfecting or enforcing any Lien or encumbrance against the Debtor or the Reorganized Debtor or their respective Properties; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor or the Reorganized Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or the Reorganized Debtor under the Plan and the Plan Documents and the other documents executed in connection therewith.  The Plan Proponents shall have the right to independently seek enforcement of this general injunction provision. This general injunction provision is an integral part of the Plan and is essential to its implementation.

12.4     **Injunction in Favor of Jewell Sumrall**

**12.4.1** Subject to the requirements and limitations contained in subparagraph 12.4.2 below, all parties shall be enjoined from taking any of the following actions:  (a) commencing or continuing in any manner any action or other proceeding against Jewell Sumrall on account of a Claim against the Debtor or claim against Jewell Sumrall; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against Jewell Sumrall on account of a Claim against the Debtor or claim against Jewell Sumrall; (c) creating, perfecting or enforcing any Lien or encumbrance against the Jewell Sumrall on account of a Claim against the Debtor or claim against Jewell Sumrall; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to Jewell Sumrall on account of a Claim against the Debtor or claim against Jewell Sumrall; (e) commencing or continuing, on account of a Claim against the Debtor or claim against Jewell Sumrall, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation

48

Order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of Jewell Sumrall. The Debtor, the Reorganized Debtor, and Jewell Sumrall shall have the right to independently seek enforcement of this injunction provision. This injunction provision is an integral part of the Plan and is essential to its implementation.

12.4.2 Notwithstanding the foregoing, Jewell Sumrall shall only be entitled to receive the benefit of the injunction created above in subparagraph 12.4.1 so long as: (a) the Reorganized Debtor has not defaulted on its Plan payments, or if a default has occurred, such default has been cured, including with respect to the timely remittal of the GUC Cash Flow Payments, (b) Jewell Sumrall is an employee or officer of the Reorganized Debtor, except that the condition this subpart (b) shall not apply in the event he dies or becomes disabled as defined by the Americans with Disabilities Act, (c) the Reorganized Debtor submits quarterly profit and loss reports and balance sheets to counsel for the Plan Administrator by the thirtieth (30th) day of the month following the end of each quarter, (d) the Reorganized Debtor submits its tax return and Jewell Sumrall's corresponding income tax return schedule for each year to counsel for the Plan Administrator within fourteen (14) days after the same are filed, (e) Jewell Sumrall makes no out of the ordinary course transfers of his assets having a monetary value over more than $10,000 each or $50,000 in aggregate per year during the Plan payment term, (f) Jewell Sumrall consensually produces his tax returns, bank statements, and personal financial statements once per year during the Plan payment term to the Plan Administrator counsel at such counsel's request, (g) Jewell Sumrall consensually participates in a deposition conducted by counsel for the Plan Administrator once per year during the Plan payment term, which shall be limited in scope to the Debtor's business operations, income, expenses, assets, and transfers and to Jewell Sumrall's income, expenses, assets, and transfers, (h) the Debtor does not, without the consent of the Plan Administrator, which consent shall not be unreasonably withheld, incur any further indebtedness out of the ordinary course of business, which, for purposes of this Plan means loans having an outstanding balance exceeding $500,000.00 in aggregate, across all post-Effective Date loans, at any given time within the Plan term, loans from merchant cash advance lenders, factoring, sales of accounts receivable, or sale-lease back arrangements, until the Debtor has fulfilled the requirements of the Plan, and (i) neither Jewell Sumrall nor Stephanie Flood receives compensation unless all Plan payments are current; provided, however, that these conditions in 12.4.2(a) – (i) shall cease to apply once the Reorganized Debtor has made all payments required under the Plan. In the event any of the foregoing conditions ceases to be met or is breached, the Plan Administrator or any creditor shall deliver a written notice of default to Jewell Sumrall at P.O. Box 242, Fairhope, AL 36532 by certified mail. In the event such notice of default is sent by a party other than the Plan Administrator, a copy shall also be sent to the Plan Administrator with copy to the Plan Administrator's counsel. Jewell Sumrall and/or the Reorganized Debtor, as applicable, shall have thirty (30) days to cure the default. In the event of a failure to cure the default within the 30-day cure period, the Plan Administrator or creditor, as applicable, shall deliver written notice of termination of the injunction to Jewell Sumrall at the same mailing address by certified mail. The injunction created in Section 12.4.1 above shall terminate upon mailing of that notice of termination. In the event notice of default is sent to the Reorganized Debtor, Jewell Sumrall shall receive no further compensation until the default is cured. Except as provided in subparagraph 12.4.3 below, the injunction created above in subparagraph 12.4.1

49

is temporary in duration, and if not terminated earlier due to a failure of a condition set forth in this subsection 12.4.2, shall terminate on the sixth (6th) anniversary of the Effective Date of the Plan.

12.4.3 If not terminated earlier due to a failure of a condition set forth in subsection 12.4.2 above, the injunction set forth in subsection 12.4.1 above in favor of Jewell Sumrall shall become a permanent injunction upon completion of all payments required under the Plan; provided, however, that as an additional condition precedent to such injunction becoming permanent, the Reorganized Debtor must satisfy certain milestones set forth below with respect to the amount of the GUC Cash Flow Payments (each a "GUC Cash Payment Milestone" and, collectively, the "GUC Cash Flow Payment Milestones"). The GUC Cash Flow Payment Milestones are as follows:

(a)     The first four (1–4) quarterly GUC Cash Flow Payments shall equal not less than $789,600 in the aggregate;

(b)     The fifth through eighth (5–8) quarterly GUC Cash Flow Payments shall equal not less than $850,000 in the aggregate;

(c)     The ninth through twelfth (9–12) quarterly GUC Cash Flow Payments shall equal not less than $900,000 in the aggregate;

(d)     The thirteenth through sixteenth (13–16) quarterly GUC Cash Flow Payments shall equal not less than $950,000 in the aggregate;

(e)     The seventeenth through twentieth (17–20) quarterly GUC Cash Flow Payments shall equal not less than $1,000,000 in the aggregate;

(f)     The twenty-first through twenty-fourth (21–24) quarterly GUC Cash Flow Payments shall equal not less than $1,100,000 in the aggregate.

Nothing contained herein shall prohibit Jewell Sumrall from contributing his own funds to the Reorganized Debtor to allow the Reorganized Debtor to meet the GUC Cash Flow Payment Milestones set forth above. Additionally, the establishment of these GUC Cash Flow Payment Milestones does not in any way relieve the Reorganized Debtor from fully complying with the terms of Article 5.14 of the Plan and paying the amount required therein if the calculated amount of the applicable GUC Cash Flow Payments exceed the GUC Cash Flow Payment Milestones. However, in the event the Debtor's GUC Cash Flow Payments for one of the time periods set forth above in subparagraphs (a)-(f) exceeds the GUC Cash Flow Payment Milestone for that particular period, a "credit" in an amount equal to the total GUC Cash Flow Payments paid during that period less the GUC Cash Flow Payment Milestone shall be applied to the next time period. For example, if the Debtor's GUC Cash Flow Payments for the first four (1-4) quarterly payments total $889,600, then a credit of $100,000 (the difference between $889,600 and the GUC Cash Flow Payment Milestone of $789,600) shall be applied toward the GUC Cash Flow Payment Milestone for quarters 5-8, but only for purposes of determining whether the Debtor has met the GUC Cash Flow

50

**Payment Milestone for the applicable period and not for calculating the GUC Cash Flow Payments for those quarters. Any such "credit" shall only apply to the immediate next GUC Cash Flow Payment Milestone period and shall not carry over to be applied to subsequent GUC Cash Flow Payment Milestone periods. Notwithstanding the foregoing, nothing contained in this paragraph shall in any way affect the Reorganized Debtor's obligation to pay the full amounts required to be paid as forth in Article 5.14 of the Plan.**

      **12.4.4 Notwithstanding anything contained herein to the contrary, neither Debtor, Reorganized Debtor, the officers, guarantors, or directors of the Debtor nor the Member shall be discharged and released from any liability for obligations arising under this Plan, however, absent further Bankruptcy Court order upon notice and hearing, the exclusive remedy for payment of any Claim or Debt (including on account of the guaranty of any Claim or Debt) so long as the Plan is not in default shall be the payment of Claims as set forth in the Plan. Any applicable statute of limitations relating to any Cause of Action or action on any guaranty agreement against the officers, guarantors, or directors of the Debtor or the Member is specifically tolled from the period of time from the Petition Date until the date upon which the Debtor or Jewell Sumrall fails to cure any default after written notice of default as set forth in the Plan.**

      12.5   <u>Term of Certain Injunctions and Automatic Stay</u>.

      12.5.1  Subject to sections 12.1-12.4 above, all injunctions or automatic stays for the benefit of the Debtor pursuant to Sections 105, 362 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date and until the Final Decree Date, unless otherwise ordered by the Bankruptcy Court.

      12.5.2  With respect to all lawsuits pending in courts in any jurisdiction (other than the Bankruptcy Court) that seek to establish the Debtor's liability on Pre-petition Claims asserted therein and that are stayed pursuant to Section 362 of the Bankruptcy Code, such lawsuits shall be deemed dismissed as of the Effective Date, unless the Debtor affirmatively elects to have the Debtor's liability established by such other courts, and any pending motions seeking relief from the automatic stay for purposes of continuing any such lawsuits in such other courts shall be deemed denied as of the Effective Date, and the automatic stay shall continue in effect, unless the Debtor affirmatively elects to have the automatic stay lifted and to have the Debtor's liability established by such other courts; and the Pre-petition Claims at issue in such lawsuits shall be determined and either Allowed or disallowed in whole or part by the Bankruptcy Court pursuant to the applicable provisions of the Plan, unless otherwise elected by the Debtor as provided herein. Notwithstanding the foregoing provisions of this paragraph, any lawsuits pending in courts in any other jurisdiction which were previously the subject of a motion for relief and for which the Bankruptcy Court granted the movant the right to litigate such claims in other jurisdictions, shall not be affected. Any judgments which may result from such lawsuits may only be paid through the Plan and, if allowed shall be includable in Class 14, subject to the movant first petitioning the Bankruptcy Court to reopen the Bankruptcy Case and subject to notice and a hearing.

12.5.3 In the event of the Reorganized Debtor's default in any payment obligation under the Plan, the Person entitled to receive such payment shall give the Reorganized Debtor written notice of default by U.S. Mail to Diamond Scaffold Services, LLC, Attn: Pres. Jewell Sumrall, P.O. Box 242, Fairhope, AL 36533-0242, Fairhope, AL 36532, with a copies to: (a) Alexandra K. Garrett, Silver Voit Garrett & Watkins, Attorneys at Law, P.C., 4317-A Midmost Dr., Mobile, AL 36609; (b) the Plan Administrator; and (c) counsel to the Plan Administrator. The Reorganized Debtor shall have thirty (30) days from the date of such notice to cure the default. In the event that the Reorganized Debtor fails to cure the default within the 30-day cure period, such creditor may pursue its remedies against the Reorganized Debtor and Sumrall in any court of competent jurisdiction without further notice or hearing. A Holder of an Allowed Claim or the Plan Administrator shall only be required to provide the Reorganized Debtor and its counsel with three (3) written notices of default and corresponding 30-day cure periods during the duration of this Plan. Upon the occurrence by the Reorganized Debtor of any uncured default or default not subject to a cure period under the Plan with respect to the Holder of an Allowed Secured Claim, and unless the Reorganized Debtor and any such Holder agree otherwise, (i) the remaining balance due and owing to such Holder shall be immediately (within seven (7) calendar days) due and payable in full; and (ii) upon the filing in the Bankruptcy Case of a declaration of final default and a proposed order, the Bankruptcy Court may enter an order in the Bankruptcy Case terminating any post-Confirmation stay or injunction in place relating to any Collateral securing the Claim of a Secured Claim Holder. Furthermore, to the extent any such Holder holds an Allowed Claim that is a Secured Claim, the Holder may also file in the Bankruptcy Case a proposed turnover order with the Bankruptcy Court compelling the Reorganized Debtor to surrender possession, custody, and control of any Collateral securing the Allowed Secured Claim of any such Holder, and the Reorganized Debtor or the Plan Administrator may file an objection on or within seven (7) calendar days thereafter to any such sought turnover asserting any defenses. The Bankruptcy Court shall retain jurisdiction over Reorganized Debtor to adjudicate any turnover issues, including, but not limited to, jurisdiction over Reorganized Debtor to compel turnover of the Collateral securing the Allowed Secured Claim that is the subject of any such turnover order. Upon the occurrence by the Reorganized Debtor of an uncured default or default not subject to a cure period under the Plan with respect to the Unsecured Creditors, the Plan Administrator may pursue any and all remedies available under applicable law.

12.6    No Liability for Tax Claims.

Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the Governmental Unit Bar Date or Administrative Expense Claim Bar Date established therefor, no Claim of such Governmental Unit shall be Allowed against the Debtor, the Reorganized Debtor or their respective officers, property of the Debtor that is deemed to have vested in the Reorganized Debtor, employees or agents for taxes, penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its Affiliates, or any other Person or Entity to have paid tax or to have filed any tax return (including any income tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

# ARTICLE 13
## RETENTION OF JURISDICTION

### 13.1 **General Retention.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, until the Bankruptcy Case is closed, the Bankruptcy Court shall retain the fullest and most extensive jurisdiction of the Bankruptcy Case that is permitted by applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out.

### 13.2 **Specific Purposes.**

In addition to the general retention of jurisdiction set forth in Article 13.1, after Confirmation of the Plan and until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case for the following specific purposes:

13.2.1 to allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application for an Administrative Expense Claim, and to determine any and all objections to the allowance or priority of Claims or Equity Interests;

13.2.2 to determine any and all cases, controversies, suits or disputes arising under or relating to the Reorganization Case, the Plan or the Confirmation Order (including regarding the effect of any release, exculpation from liability, discharge, limitation of liability, or injunction provisions provided for herein or affected hereby and regarding whether the conditions precedent to the consummation and/or Effective Date of the Plan have been satisfied);

13.2.3 to determine any and all applications for allowance of compensation of Professionals and reimbursement of expenses under Section 330, 331 or 503(b) of the Bankruptcy Code arising out of or relating to the Reorganization Case; provided, however, that this retention of jurisdiction shall not require prior Bankruptcy Court approval of the payment of fees and reimbursement of expenses of Professionals incurred after the Effective Date unless an objection to such fees and expenses has been made by the Reorganized Debtor or the Plan Administrator;

13.2.4 to determine any and all motions pending as of the date of the Confirmation Hearing (including pursuant to the Plan) for the rejection, assumption, or assignment of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to determine the allowance of any Claims resulting from the rejection thereof or any Cure Claims;

13.2.5 to determine any and all motions, applications, adversary proceedings, contested or litigated matters, Causes of Action, and any other matters involving the Debtor, the Reorganized Debtor, or the Post-Confirmation Estate commenced in connection with, or arising during, the Reorganization Case, including approval of proposed settlements thereof;

13.2.6 to enforce, interpret and administer the terms and provisions of the Plan and the Plan Documents;

13.2.7 to modify any provisions of the Plan to the fullest extent permitted by the Bankruptcy Code and the Bankruptcy Rules;

13.2.8 to consider and act on the compromise and settlement of any Claim against or Equity Interest in the Debtor or its Estate;

13.2.9 to assure the performance by the Reorganized Debtor and the Plan Administrator of its obligations under the Plan;

13.2.10 to correct any defect, cure any omission, reconcile any inconsistency or make any other necessary changes or modifications in or to the Disclosure Statement, the Plan, the Plan Documents, the Confirmation Order, or any exhibits or schedules to the foregoing, as may be necessary or appropriate to carry out the purposes and intent of the Plan, including the adjustment of the date(s) of performance under the Plan in the event the Effective Date does not occur as provided herein so that the intended effect of the Plan may be substantially realized thereby;

13.2.11 to resolve any disputes concerning any release or exculpation of, or limitation of liability as to, a non-debtor (including any Professional) hereunder or the injunction against acts, employment of process or actions against such non-debtor (including any Professional) arising hereunder;

13.2.12 to enforce and interpret all orders, judgments, injunctions and rulings entered in connection with the Reorganization Case;

13.2.13 to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, including the Plan Documents;

13.2.14 to review and approve any sale or transfer of assets or Property by the Debtor, the Reorganized Debtor, or the Plan Administrator, including prior to or after the date of the Plan, and to determine all questions and disputes regarding such sales or transfers;

13.2.15 to determine all questions and disputes regarding title to the assets or Property of the Debtor, the Estate, the Reorganized Debtor, or the Post-Confirmation Estate;

13.2.16 to determine any and all matters, disputes and proceedings relating to the Causes of Action, whether arising before or after the Effective Date;

13.2.17 to determine any motions or contested matters involving taxes, tax refunds, tax attributes, tax benefits and similar or related matters with respect to the Debtor arising on or prior to the Effective Date or arising on account of transactions contemplated by the Plan;

13.2.18 to resolve any determinations which may be requested by the Debtor or the Reorganized Debtor of any unpaid or potential tax liability or any matters relating thereto under Sections 505 and 1146 of the Bankruptcy Code, including tax liability or such related matters for any taxable year or portion thereof ending on or before the Effective Date;

13.2.19 to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

13.2.20 to enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.2.21 to determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or the Plan Documents;

13.2.22 to enter such orders as are necessary to implement and enforce the injunctions described herein;

13.2.23 to enforce the obligations of any purchaser of any Property of the Debtor;

13.2.24 to enforce or interpret the Global Settlement Agreement and any rights, duties, or obligations of the parties thereto.

13.2.25 to determine such other matters and for such other purposes as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law; and

13.2.26 to enter an order concluding and terminating the Bankruptcy Case.

13.3      **Closing of the Bankruptcy Case.**

In addition to the retention of jurisdiction set forth in Articles 13.1 and 13.2, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case to enter an order reopening the Bankruptcy Case after it has been closed.

# ARTICLE 14
# MODIFICATION OF PLAN AND CONFIRMATION OVER OBJECTIONS

14.1      **Modification of Plan.**

14.1.1 The Plan Proponents may revoke the Plan or modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the Disclosure Statement meet applicable Bankruptcy Code and Bankruptcy Rules requirements.

14.1.2  After the entry of the Confirmation Order, the Debtor (prior to the Effective Date) or the Reorganized Debtor or the Plan Administrator (on and after the Effective Date) may modify the Plan to remedy any defect or omission herein, or to reconcile any inconsistencies between the Plan and the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (a) the Debtor, the Reorganized Debtor, or the Plan Administrator (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and a hearing, and (b) such modification does not materially adversely affect the interests, rights, or treatment of any Class of Claims or Equity Interests under the Plan.

14.2.3  After the entry of the Confirmation Order and before substantial consummation of the Plan, the Debtor (prior to the Effective Date) or the Reorganized Debtor or the Plan Administrator (on and after the Effective Date) may modify the Plan in a way that materially adversely affects the interests, rights, or treatment of a Class of Claims or Equity Interests, provided that (a) the Plan, as modified, meets applicable Bankruptcy Code requirements, (b) the Debtor or the Reorganized Debtor or the Plan Administrator (as the case may be) obtains Bankruptcy Court approval for such modification, after notice to the Notice Parties and the Class of Claims or Equity Interests materially adversely affected and a hearing, (c) such modification is accepted by (i) at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims actually voting in each Class of Claims adversely affected by such modification or (ii) at least two-thirds in amount of Allowed Equity Interests actually voting in each Class of Equity Interests adversely affected by such modification, and (d) the Debtor or the Reorganized Debtor or the Plan Administrator (as the case may be) comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

14.2.4  Notwithstanding anything to the contrary contained in this Article 14 or elsewhere in the Plan, the Plan may not be altered, amended or modified without the written consent of the Debtor (prior to the Effective Date) or the Reorganized Debtor and the Plan Administrator (on and after the Effective Date).

14.3  **Confirmation Over Objections.**

In the event any Impaired Class of Claims or Equity Interests votes against the Plan, and the Plan is not revoked or withdrawn in accordance with Article 14, the Plan Proponents hereby request, and shall be allowed, to modify the terms of the Plan to effect a "cramdown" on such dissenting Class by (a) restructuring the treatment of any Class on terms consistent with Section 1129(b)(2) of the Bankruptcy Code, or (b) deleting distributions to all Classes at or below the level of the objecting Class, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code.  The Plan Proponents may make such modifications or amendments to the Plan and such modifications or amendments shall be filed with the Bankruptcy Court and served on all parties in interest entitled to receive notice prior to the Confirmation Hearing.  No such modifications shall require any re-solicitation of acceptances as to the Plan by any Class of Claims or Equity Interests unless the Bankruptcy Court shall require otherwise.  Notwithstanding any provision of the Plan to the contrary, the Plan Proponents reserve any and all rights they may have to challenge the validity,

perfection, priority, scope and extent of any Liens in respect to any Secured Claims and the amount of any Secured Claims, the Holders of which have not accepted the Plan.

# ARTICLE 15
## MISCELLANEOUS PROVISIONS

15.1    <u>No Admissions</u>.

The Plan provides for the resolution, settlement and compromise of Claims against and Equity Interests in the Debtor. Nothing herein shall be construed to be an admission of any fact or otherwise binding upon the Debtor in any manner prior to the Effective Date.

15.2    <u>Revocation or Withdrawal of the Plan</u>.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Plan Proponents revoke or withdraw the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

15.3    <u>Standard for Approval of the Bankruptcy Court</u>.

In the event any of the matters described herein are brought for approval before the Bankruptcy Court, then any such approval shall mean the entry of an order by the Bankruptcy Court approving the matter using the standards for approval of similar matters by a Chapter 11 debtor-in-possession.

15.4    <u>Further Assurances</u>.

The Plan Proponents, the Reorganized Debtor, and the Plan Administrator agree, and are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

15.5    <u>Headings</u>.

The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

15.6    <u>Notices</u>.

All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid,

or by overnight delivery by a recognized courier service, addressed as follows: (a) if to the Debtor or the Reorganized Debtor, then to P.O. Box 242, Fairhope, AL 36533-0242 with copies to Alexandra K. Garrett, Silver Voit & Garrett, Attorneys at Law, P.C., 4317-A Midmost Drive, Mobile AL 36609-3556; (b) if to the Committee, then to Edward J. Peterson, Johnson Pope Bokor Ruppel & Burns LLP at 400 N. Ashley Drive, Suite 3100, Tampa, FL 33602 with copies to Matthew B. Hale, Stichter Riedel Blain & Postler, P.A., 110 E. Madison St., Suite 200, Tampa, FL 33602. Copies of all notices under the Plan to any party shall be given to each of the parties listed above contemporaneously with the giving of such notice. Any of the parties listed above may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court.

15.7 <u>Governing Law</u>.

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana, without giving effect to the principles of conflicts of law thereof.

15.8 <u>Limitation on Allowance</u>.

No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise expressly provided in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

15.9 <u>Estimated Claims</u>.

To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

15.10 <u>Consent to Jurisdiction</u>.

Upon any default under the Plan, the Plan Proponents consent to the jurisdiction of the Bankruptcy Court and agree that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default.

By accepting any Distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Plan, by reason of being served with notice of the filing of the Reorganization Case or the Confirmation Hearing, or by entering an appearance in the Reorganization Case, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Debtor, the Plan or the Reorganization Case, including the matters and purposes set forth

in Article 13 of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article 13 of the Plan.

15.11    Setoffs.

Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Reorganized Debtor may, but shall not be required to, set off against any Claim and any Distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor or the Reorganized Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim that the Debtor or the Reorganized Debtor may have against the Holder of such Claim.

15.12    Successors and Assigns.

The rights, benefits, duties and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

15.13    Modification of Payment Terms.

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

15.14    Entire Agreement.

The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents. No Person or Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or as may hereafter be agreed to by such Person or Entity in writing.

15.15    Severability of Plan Provisions.

If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

15.16   <u>Controlling Document</u>.

To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor or the Reorganized Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Bankruptcy Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

15.17   <u>Computation of Time</u>.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

15.18   <u>Substantial Consummation</u>.

Under the Plan of Reorganization, the Plan shall be deemed to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon the date of the Initial Distribution.

[Remainder of page intentionally left blank]

DIAMOND SCAFFOLD SERVICES, LLC

By:    */s/ Jewell Sumrall*
       Jewell Sumrall
       Its: President

COUNSEL FOR THE DEBTOR

/s/ *Alexandra K. Garrett*
Alexandra K. Garrett
Jason R. Watkins
SILVER, VOIT, GARRETT & WATKINS,
Attorneys at Law, P.C.
4317-A Midmost Drive
Mobile AL 36609-5589
251 343-0800
Email: agarrett@silvervoit.com
      jwatkins@silvervoit.com
LS-8878-15212

*Counsel for Debtor and Debtor-in-Possession*

COUNSEL FOR THE COMMITTEE

*/s/ Edward J. Peterson*
Edward J. Peterson (ABN 1848-E68E)
**JOHNSON POPE BOKOR RUPPEL & BURNS, LLP**
401 E Jackson St., Ste. 3100
Tampa, FL 33602
Telephone: (813) 225-2500
Email: edwardp@jpfirm.com

-and-

*/s/ Matthew B. Hale*
Matthew B. Hale (*pro hac vice*)
Florida Bar No. 110600
**STICHTER RIEDEL BLAIN & POSTLER, P.A.**
110 E. Madison Street, Suite 200
Tampa, FL 33602
Telephone: (813) 229-0144
Email: mhale@srbp.com

*Counsel to the Committee of Creditors Holding Unsecured Claims*

Dated: September 18, 2024

61