IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| In re: | * | |
| | * | Case No. 22-11208 |
| Diamond Scaffold Services, LLC | * | |
| | * | |
| Debtor. | * | |

**ORDER CONFIRMING CHAPTER 11 PLAN**

This case came before the Court for hearing on January 14, 2025 on proper notice (the "**Confirmation Hearing**") to consider confirmation of the *Joint Plan of Reorganization of Diamond Scaffold Services, LLC Under Chapter 11 of the Bankruptcy Code* (doc. 907) (the "**Plan**") filed by Diamond Scaffold Services, LLC (the **"Debtor"**) and the Official Committee of Creditors Holding Unsecured Claims (the **"Committee"**).

At the Confirmation Hearing, the Court considered the Plan, *Disclosure Statement Accompanying Plan of Reorganization of Diamond Scaffold Services, LLC Under Chapter 11 of the Bankruptcy Code* (the **"Disclosure Statement"**) (Doc. 906), and *Debtor's Memorandum and Affidavit in Support of Confirmation* (the "**Confirmation Affidavit**") (Doc. 956) as well as the arguments of counsel for the Debtor and Committee. There were no objections to the Plan. Appearances were made as reflected on the record.

Having considered the Plan, the Disclosure Statement, the Confirmation Affidavit, the *Report of Ballots* (Doc. 953), the entire record in this Chapter 11 case, and arguments of counsel, the Court finds, concludes, and orders as follows:

1. ***Jurisdiction and Venue.*** This Court has jurisdiction pursuant to 28 U.S.C. §1334 over the Debtor, the Debtor's Chapter 11 case, all Claims against and Equity Interests in the Debtor, all Creditors of the Debtor, all Holders of Claims against and Holders of Equity Interests in the Debtor; and all the Debtor's Assets, wherever located. Confirmation of the Plan is a "core

proceeding" pursuant to, and without limitation, 28 U.S.C. §§157(b)(2)(L). The Court has jurisdiction to enter a final order with respect to Confirmation of the Plan. Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. ***Terms.*** All capitalized terms used in, but not defined in, this Confirmation Order shall have the meanings ascribed to them in the Bankruptcy Code, the Plan, and/or the Disclosure Statement.

3. ***Commencement of Chapter 11 Case.*** This Chapter 11 case was commenced on June 21, 2022 (the "**Petition Date**"), the date on which the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. From the Petition Date, the Debtor has remained in possession of its property as debtor-in-possession.

4. ***Appointment of the Committee***. By order dated July 21, 2022 (Doc.92), the Court appointed the Committee to represent the interests of the unsecured creditors.

5. ***Plan and Disclosure Statement.*** The Plan and Disclosure Statement were filed on September 18, 2024. On November 7, 2024, the Court entered an *Order Approving Disclosure Statement, Setting Confirmation Hearing, and Establishing Related Deadlines* (the "**Disclosure Statement Order**") (Doc. 926).

6. ***Transmittal of Solicitation Materials.*** Pursuant to the Disclosure Statement Order, copies of the Disclosure Statement, Plan, and Disclosure Statement Order, together with a ballot, were served by mail by the Debtor on all Creditors in compliance with the Disclosure Statement Order; the Bankruptcy Rules including, without limitation, Rule 3017(d); and the Local Rules of this Court. Appropriate certificates have been filed regarding such service (Doc. 928). Such service was adequate, sufficient and complied with due process.

7. ***Adequacy of Notice.*** Timely and proper notice of the Confirmation Hearing and the time fixed for filing objections to and ballots accepting or rejecting the Plan was given to all Creditors and all parties in interest. Such notice complied with due process and was adequate and sufficient to notify all Creditors and parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Plan. Such notice also complied in all respects with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, including without limitation Rules 2002, 3018, 3019, and 9006, and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

8. ***Ballots.*** On January 9, 2025, the Debtor filed the Balloting Report reflecting the acceptances and rejections of each Class that voted to accept or reject the Plan.

9. ***Classifications of Creditors.*** The Plan classifies Claims and Equity Interests into seven separate Classes, which are as follows:

Class 1 - Priority Claims

Class 2 - Allowed Mazuma Secured Claims

Class 3 - Allowed Internal Revenue Service Secured Claims

Class 4 - Allowed 3 Cajuns, LLC Secured Claims

Class 5 - Allowed Secured Alabama Dept. of Revenue Claims

Class 6 - Allowed Secured Baldwin County Revenue Commission Claims

Class 7 - Allowed Secured Mississippi Dept. of Revenue Claims

Class 8 - Allowed Secured Tennessee Labor and Workforce Development Claims

Class 9 - Allowed Texas Comptroller of Public Accounts Claims

Class 10 - Allowed Texas Workforce Commission Claims

Class 11 - Allowed Secured Claims of BMO Harris Bank N.A.

Class 12 - Allowed Secured Claims of Ford Motor Credit Company

Class 13 - Allowed Secured Claims Truist Bank

Class 14 - Unsecured Claims

Class 15 - Equity Interests

Class 11 is unimpaired. Classes 1-10 and 12-15 are impaired under the Plan.

10. ***Additions.*** The following additions to the Plan were either (a) required to be incorporated into the Plan by a previous order approving a compromise under Bankruptcy Rule 9019, or (b) announced on the record at the Confirmation Hearing and are incorporated herein:

(1) **Incorporation of compromise between the Debtor, Jewell Sumrall, Committee, and AAIT Technocraft Scaffold.** Section 12.4.2.1, as set forth below, shall be added after Section 12.4.2 of the Plan:

***12.4.2.1 Terms of Compromise with Committee, Sumrall, Debtor, and AAIT.***

The terms of the Settlement and Release Agreement between Debtor, the Committee, Jewell Sumrall, and AAIT - Technocraft Scaffold Distribution as approved by this Court's order dated January 14, 2025 (Doc. 964) are hereby incorporated into this Plan by reference.

In addition to the foregoing, Jewell Sumrall shall only be entitled to receive the benefit of the injunction created above in paragraph 12.4.1 with respect to AAIT so long as, in addition to the requirements set forth above, (j) Sumrall has not defaulted on the Sumrall True Up Payment, or if a default has occurred, such default has been timely cured. In the event Sumrall defaults on a Sumrall True Up Payment, AAIT shall be entitled to deliver written notice of default to Jewell Sumrall at P.O. Box 242, Fairhope, AL 36532 by certified mail, with copy to the Plan Administrator and Sumrall's counsel. In the event of failure to cure the default within the 30-day cure period, AAIT shall be entitled to deliver written notice of termination of the injunction to Jewell Sumrall at the same mailing address by certified mail. The injunction created in Section 12.4.1 above shall terminate with respect to AAIT upon mailing of that notice of termination. In addition to the foregoing, Jewell Sumrall shall only be entitled to receive the benefit of the injunction created above in paragraph 12.4.1 with respect to McElroy so long as, in addition to the requirements set forth above, (j) Sumrall has not defaulted on the Sumrall True Up

Payment, or if a default has occurred, such default has been timely cured. In the event Sumrall defaults on a Sumrall True Up Payment, McElroy shall be entitled to deliver written notice of default to Jewell Sumrall at P.O. Box 242, Fairhope, AL 36532 by certified mail, with copy to the Plan Administrator and Sumrall's counsel. In the event of failure to cure the default within the 30 day cure period, McElroy shall be entitled to deliver written notice of termination of the injunction to Jewell Sumrall at the same mailing address by certified mail. The injunction created in Section 12.4.1 above shall terminate with respect to McElroy upon mailing of that notice of termination.

For purposes of this Plan, the "Sumrall True Up Payment" shall be defined and calculated as follows: If Allowed Claim 46 were paid in full under the Plan over 24 quarters, AAIT would receive its pro rata share of the Initial GUC Distribution. After receipt of its pro rata share of the Initial GUC Distribution, the balance of AAIT's Allowed Claim (the "AAIT Balance") would then be paid from the GUC Cash Flow Payments in no more than 24 quarterly payments (each a "AAIT's Quarterly Distribution"). Within thirty (30) days of the Plan Administrator's receipt of each GUC Cash Flow Payment made by the Reorganized Debtor, Sumrall will pay to AAIT and Arnold McElroy, collectively, the difference between 1/24th of the AAIT Balance and the amount distributed to the Holder of Allowed Claim 46 by the Plan Administrator for that quarter (the "Sumrall True Up Payment"). For example, if the Plan Administrator receives a GUC Cash Flow Payment on April 30, 2025 that would result in a distribution to the Holder of Allowed Claim 46 of $20,000, then within thirty (30) days of the Plan Administrator's receipt of said GUC Cash Flow Payment, Sumrall will pay to AAIT and McElroy, collectively, the difference between 1/24th of the AAIT Balance and $20,000. In the event the Plan Administrator fails to distribute a quarterly payment to AAIT, within thirty (30) days of the end of the quarter, Sumrall will pay to AAIT and McElroy, collectively, 1/24th of the AAIT Balance. Sumrall will divide each Sumrall True Up Payment and remit 50% of the Sumrall True Up Payment to AAIT and 50% of the Sumrall True Up Payment to McElroy.

(2) **Additional IRS Rights and Remedies.** Section 10.12 shall be added to the Plan as follows:

a. Nothing in the Plan or subsequent Confirmation Order shall release or exculpate any non-debtor from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, environmental laws, or any criminal law, nor shall anything in this Confirmation Order of the Plan enjoin the United States from bringing any claim, suit, action or other proceeding for any liability whatsoever; provided however, that the foregoing sentence shall not limit the scope of discharge granted to the Debtor under Sections 524 and 1141 of the Bankruptcy Code.

b. Nothing in the Plan or subsequent Confirmation Order shall affect or impair any statutory or common law setoff or recoupment rights of the Internal Revenue Service in accordance with 11 U.S.C. § 553.

c. Nothing in the Plan or subsequent Confirmation Order shall affect or impair any rights of the Internal Revenue Service to pursue any non-Debtor third parties for tax debts or claims, and the United States specifically opts out of, and shall not be bound by, any third party release(s) in the Plan.

d. Nothing in the Plan or subsequent Confirmation Order shall be deemed to determine the tax liability of any person or entity; however, with regard to the Debtor, this provision shall only apply to the post-petition tax liability of the Debtor and shall not apply to pre-petition tax liability. Neither the Plan nor Confirmation Order shall be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequence of this Plan, nor shall anything in this Plan or Confirmation Order be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under 11 U.S.C. § 505.

e. The Internal Revenue Service does not consent to the Bankruptcy Court's jurisdiction over matters reserved to other Federal Courts, such as the Court of Federal Claims or Tax Court.

(3) **Section 12.4.5 shall be added as follows:**

Notwithstanding any other provision in the Plan or Confirmation Order, nothing in the Plan or Confirmation Order shall be deemed to release Jewell Sumrall from (i) any domestic support obligations owed to any party under state court order or applicable non-bankruptcy law or (ii) any debts, claims, causes of action, or obligations that arise following entry of the Confirmation Order and are not related to Claims against the Debtor's Estate.

11. ***Revisions.*** The following revisions to the Plan were announced on the record at the Confirmation Hearing and are incorporated herein:

(1) Article 5, Section 5.3.3 is revised to read as follows:

The IRS's Allowed Secured Claim shall be paid in full as provided in this subsection. The Reorganized Debtor shall pay the IRS's Allowed Secured Claim in equal monthly installments over a term of 60 months from the Petition Date, with payments beginning on

the Effective Date, with interest at the applicable statutory rate.

(2) Article 5, Section 5.8 shall be revised to replace "Tennessee Department of Revenue" with "Tennessee Labor and Workforce Development" and to provide treatment of the Tennessee Labor and Workforce Development's Allowed Secured Claim in the amount of $3,649.73. Tennessee Department of Revenue's Allowed Claim shall be treated an unsecured priority tax claim under Article 5, Section 5.1.

(3) Article 11, Section 11.2 shall be deleted and replaced in its entirety as follows:

11.2 Conditions Precedent to the Effective Date. The Plan shall not be consummated and the Effective Date shall not occur unless (1) the Confirmation Order, in form and substance satisfactory to the Plan Proponents, shall be a Final Order, and (2) the order approving the employment of the Plan Administrator has been entered.

(4) Article 15.7 shall be revised to replace "State of Louisiana" with "State of Alabama."

12. ***Benefit to Creditors.*** The Plan and the entire record demonstrate that the transactions contemplated by the Plan will provide a significant benefit to all Creditors and will provide for payments to be made on account of Allowed Administrative Expense Claims, Priority Claims, Priority Tax Claims, Secured Claims, Secured Tax Claims, and Unsecured Claims.

13. ***Satisfaction of Bankruptcy Code Section 1129(a) and (b)(1).*** The Plan satisfies all elements of Bankruptcy Code Section 1129(a) except for 1129(a)(8). The Plan was not accepted by each impaired class of claimants as required for confirmation by Section 1128(a)(6). However, the Plan satisfies Bankruptcy Code Section 1129(b)(1) because it does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the Plan.

14. ***Unimpaired Class.*** Class 11 (the "**Unimpaired Class**") is unimpaired under the Plan as the term "unimpaired" is defined in Section 1124 of the Bankruptcy Code. Accordingly,

the Unimpaired Class is deemed to have accepted the Plan and creditors in Class 11 are not entitled to vote on the Plan.

15. ***Impaired Classes.*** Classes 1-10 and 12-15 (collectively, the "**Impaired Classes**") are impaired under the Plan, as the term "impaired" is defined in Section 1124 of the Bankruptcy Code and all of them were entitled to submit votes to accept or reject the Plan. Classes 2, 4, 14, and 15 voted to accept the Plan. Classes 1, 3, 5-10, and 12-13 did not vote to accept or reject the Plan.

16. ***Accepting Impaired Classes***. As set forth in the Report of Ballots and announced at the Confirmation Hearing, Classes 2, 4, 14, and 15 voted to accept the Plan. As a result, at least one Impaired Class has voted to accept the Plan, determined without including any acceptance of the Plan by any insider, satisfying the requirement of Section 1129(a)(10) of the Bankruptcy Code.

17. ***Acceptance of the Plan.*** As set forth above, Impaired Classes 2, 4, 14, and 15 have accepted the Plan.

18. ***Rejection of the Plan by Class 1 and Treatment of Priority Tax Claims.*** Class 1 is impaired under the Plan and did not vote to accept or reject the Plan. Class 1 is comprised of priority tax creditors. To the extent Class 1 is deemed to reject the Plan, such priority tax creditors will receive, on account of their claims, payment in full in equal monthly installments with interest at the applicable statutory rate, or if there is none at the rate of 8.25% per annum, amortized over a term of 60 months from the Petition Date. Therefore, the Plan satisfies Section 1129(a)(9)(C).

19. ***Rejection by Classes 3 and 5-13 and Treatment of Secured Claims.*** Classes 3, 5-10, and 12-13 consist of the Allowed Secured Claims of certain creditors. These classes are impaired under the Plan and did not vote to accept or reject the Plan. To the extent Classes 3, 5,-10, and 12-13 are deemed to reject the Plan, such secured creditors will retain their liens and will

receive, on account of their claims, deferred cash payments totaling at least the allowed amount of such claims, of a value, as of the Effective Date of the Plan, of at least the value of the claim holder's interest in the estate's interest in such property. Therefore, the Plan satisfies Section 1129(b)(2).

20. ***Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Claims.*** The treatment of Administrative Expense Claims and Priority Claims under the Plan satisfies the requirements of subparagraphs (A) and (B) of Section 1129(a)(9) of the Bankruptcy Code, respectively.

21. ***Good Faith Solicitation***. The Debtor, Committee, and their respective representatives have solicited votes to accept or reject the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the orders of this Court, and are therefore entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions contained in the Plan, including Article 12 of the Plan.

It is therefore **ORDERED** as follows:

1. The Plan is confirmed pursuant to Bankruptcy Code Section 1129.

2. The findings of fact and conclusions of law set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact set forth in this Confirmation Order are deemed to be conclusions of law, such findings of fact are confirmed as conclusions of law.

3. The Debtor has met its burden of proving all the applicable elements of Section 1129(a) of the Bankruptcy Code except for 1129(a)(8).

4. The Debtor has met its burden of proving all the elements of Section 1129(b)(1) of the Bankruptcy Code. The evidence admitted at the Confirmation Hearing satisfies the requirements of Section 1129(b).

5. The Court finds that the Plan and this Confirmation Order are binding upon any and all Creditors and parties in interest. The Court finds that all Creditors and parties in interest received sufficient and proper notice, actual or constructive, of the Plan and the Confirmation Hearing. The provisions of the Plan and this Confirmation Order are binding upon the Debtor, the Debtor's Estate, the Committee, all Creditors, whether or not the Claims of such Creditors are Impaired under the Plan and whether or not such Creditors have accepted the Plan, all other parties in interest, and the respective successors and assigns of all such entities.

6. All of the discharge, injunction, limitation of liability, and other related provisions of the Plan, including those set forth in Article 12 of the Plan, are fair, equitable, reasonable, and proper, are in the best interest of the Debtor's Estate and Creditors, are necessary and material conditions precedent to the Plan, and are binding upon all Creditors and parties in interest. The Court has the inherent constitutional and statutory power and authority to issue and enter the discharges, releases, and injunctions contained in the Plan and in this Confirmation Order.

7. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, this Court shall retain the fullest and most extensive jurisdiction over this case that is permitted under applicable law, including that necessary to ensure that the purposes and intent of the Plan are carried out. Without limiting the generality of the foregoing, after Confirmation of the Plan, this Court shall retain jurisdiction of this case for each of the specific purposes set forth in Article 13 of the Plan.

8. Subject to the conditions set forth in the Plan and this Confirmation Order, the Debtor, the Reorganized Debtor, the Plan Administrator (subject to approval of the Plan Administrator's appointment by separate order), each of their agents, attorneys, and authorized representatives are authorized, empowered, and directed to take all such steps necessary to effectuate and implement the Plan, including, without limitation, the execution and delivery of documents necessary to implement the Plan and the various other documents, agreements, and instruments contemplated by the Plan and the various agreements referenced in the Plan.

9. The provisions of the Plan set forth in Article 9 of the Plan relating to the Plan Administrator are approved; provided, however, that the Plan Proponents shall file a separate application to approve the selection and appointment of the Plan Administrator. The Plan Administrator, upon approval of his or her appointment, shall have the rights and powers as set forth in Article 9 of the Plan. The Plan Administrator shall be considered a "representative" of the Post-Confirmation Estate within the meaning of 11 U.S.C. § 1123(b)(3)(B).

10. The Post-Confirmation Estate shall be a continuation of the Estate, and on the Effective Date, the Causes of Action shall vest in, and become assets of, the Post-Confirmation Estate, free and clear of any and all Liens, Debts, obligations, Claims, Cure Claims, Liabilities, Equity Interests, and all other interests of every kind and nature. Unless extended by order of the Court, all objections to Claims shall be filed within 90 days after the Effective Date. Objections to late-filed Claims and Claims resulting from the rejection of executory contracts or unexpired leases shall be filed on the later of (a) 90 days following the Effective Date or (b) the date 60 days after the Debtor receives actual notice of the filing of such Claim.

11. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfer from the Debtor or the Reorganized Debtor to any person or entity and the making or delivery of an instrument or

instruments of transfer pursuant to the Plan and/or this Confirmation Order shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax, governmental assessment, or fee, including any applicable transfer taxes or fees and mortgage recording taxes or fees. All filing officers and their agents are directed to accept from the Debtor or the Reorganized Debtor (as the case may be) for recording and to record such documents and instruments that may be required to effectuate the Plan, including without limitation any financing, security, mortgage, or similar documents as are customarily recorded in connection with commercial transactions, immediately upon presentation of such documents, unconditionally and without reservation, without the presentation of any declarations, instruments, or returns otherwise required for recording or filing and without the assessment or payment of any stamp tax, transfer tax, or similar tax imposed by any state or local law, and shall not require payment of such tax.

12. The inclusion of certain paragraphs in this Confirmation Order referring to specific provisions of the Plan or authorizing specific action shall not be construed to imply non-approval of other provisions or non-authorization of other actions. The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect, or enforceability of such provision and such provision shall have the same validity, binding effect, and enforceability as every other provision of the Plan.

13. To the extent of any inconsistency between the terms of the Plan and this Confirmation Order, the terms of the Confirmation Order shall govern.

14. The clerk shall serve a copy of this Confirmation Order on all creditors and Holders of Equity Interests of the Debtor set forth on the Court’s mailing matrix for this case.

15. All professionals shall file applications for fees and expenses through the date of the entry of this Confirmation Order on or before the date that is 30 days after the entry of this Confirmation Order. Once approved, administrative expense claims shall be paid according to the Plan. All applications for administrative expense claims shall be filed by the Administrative Expense Claims Bar Date, which is that date which is 30 days after the Effective Date of the Plan. The debtor shall file with the Court an initial post-confirmation report (BA-4) within 60 days from the date of this order, and quarterly thereafter until further order of the Court. The initial report shall reflect any progress made in consummating the plan during the period covered by the report. The reports shall include (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the provisions of the confirmed plan are being substantially complied with. Not later than 14 days after the Plan is substantially consummated, the Debtor shall file with the court and serve on the trustee, Bankruptcy Administrator, and all parties in interest notice of such substantial consummation. Until the case is closed, the debtor shall file with the court on a quarterly basis a report of disbursements (BA-2) for that quarter and pay a fee pursuant to 28 U.S.C. §§1930(a)(6),(7).

16. Except as otherwise expressly provided in the Plan or this Confirmation Order, without further notice, pleading, or hearing, on the Effective Date, the Debtor, its estate, and the Reorganized Debtor shall be discharged pursuant to Section 1141(d) of the Bankruptcy Code, to the fullest extent permitted by appliable law, from any Claim or Debt of any nature whatsoever against the Debtor that arose prior to the Effective Date.

17. The stay of this order under Bankruptcy Rule 3020(e) is waived.

DATED: FEBRUARY 13, 2025

JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE

Order prepared by:

Alexandra K. Garrett
Silver Voit Garrett & Watkins,
Attorneys at Law P.C.
4317-A Midmost Dr.
Mobile, Alabama 36609
251-343-0800
agarrett@silvervoit.com

Order approved by:

Edward Peterson and Matt B. Hale as counsel for the Committee of Unsecured Creditors

Mark Zimlich, Bankruptcy Administrator

Keith Jones, AUSA, Counsel for Internal Revenue Service

Order reviewed without objection:

Gina Hantel, Counsel for Tennessee Dept. of Revenue and Tennessee Labor and Workforce Development